# CHARLESTON.

STATE *v.* SWANN, *et al.*

(BRANNON, JUDGE, *dissenting*).

Submitted January 14, 1899—Decided March 25, 1899.

1. DUE PROCESS OF LAW — *Taxation —Forfeiture—Constitutional Law.*

    Section 6 of Art. XIII of the Constitution of this State, providing for the forfeiture of lands for the nonentry thereof for five successive years after the year 1869, is not in violation of the fourteenth amendment of the constitution, restraining states from depriving any person of life, liberty, or property, without due process of law. (p. 132, 137).

2. CONSTITUTIONAL LAW—*Taxation—Forfeiture—Non-entry.*

    Although said section of the Constitution provides for the forfeiture of lands containing one thousand acres or more, it does not limit such forfeiture to tracts of land of one thousand acres or more in quantity; and the act of 1873, providing for the for-

feiture of a less number of acres than one thousand, for nonentry upon the land books, is merely cumulative, and not inhibited by said section of the Constitution.   (p. 133, 134).

3.  TAXATION—*Forfeiture—Non-entry.*
    In such cases failure to enter and pay taxes due on land for five successive years, as required by statute, caused the forfeiture of such land to become complete and absolute, and no inquisition, judicial proceeding, or inquest or finding of any kind was necessary to consummate such forfeiture.   (p. 136).

Appeal from Circuit Court, Kanawha County.

Bill by the State against Thomas Swann and others.   A decree was rendered from which defendant Swann appeals.

*Affirmed.*

JOHN S. SWANN, for appellant.

WARTH & BRIGGS and JAMES H. FERGUSON, for appellee.

ENGLISH, JUDGE :

This was a suit in chancery, brought in the name of the State, under the provisions of chapter 105 of the Code, as amended and re-enacted by the act of February 23, 1893, against Thomas B. Swann and others, in the circuit court of Kanawha County, having for its object the sale of a tract of land containing seven hundred acres, more or less, known as the "Valcoulon Tract," situated on Kanawha river below the mouth of Coal river, Jefferson district; being the same land which was conveyed to said T. B. Swann by J. C. Brown and wife by deed dated November 30, 1871, which land was described as containing seven hundred to eight hundred acres, and was entered on the land book and 'charged to said Swann for the year 1873 as seven hundred and eighty-four and one-fourth acres, gradually reduced by the sale of lots, etc., until, in 1873, it was entered on the land books at seven hundred and forty-two acres.

The bill alleges that said Swann neglected and failed to have said land charged with taxes for the years 1882, 1883, 1884, 1885, 1886, 1887, 1888, 1889, 1890 and 1891, as it was his duty to do, and that, by reason of such neglect and failure to have said land entered upon the land book for five successive years, the said tract became and was thereby forfeited to the State of West Virginia, and liable to be sold

for the benefit of the school fund.   The bill further alleges
that Assessor C. M. Hansford in reassessing the lands in
Kanawha County, in 1892, assessed the said tract as fol-
lows:   Ninety-nine acres of bottom land, valued at three
thousand nine hundred and sixty dollars, and five hundred
and thirty-six acres of hill land, valued at two thousand six
hundred and eighty dollars; that said valuation for ninety-
nine acres of bottom land included one thousand dollars
for buildings, and the same was valued as a whole at forty
dollars per acre, and the five hundred and thirty-six acres
of hill land at five dollars per acre, and said lands were so
entered on the land book for the year 1892, and taxes
charged thereon; but that said entry and charges were il-
legal and improper, and that said charges have not been
paid.   The plaintiff also alleges that the number of acres
so charged to said Swann for the year 1892 is incorrect, or
the number theretofore charged to him was incorrect, and
that a survey should be made to ascertain the right num-
ber of acres chargeable to said Swann for the years from
1882 to 1891, inclusive at the valuation placed thereon by
Assessor Sinnett in 1883, and that placed thereon by As-
sessor Hansford in 1892, for said year, and each succeed-
ing year.   The plaintiff then proceeds to enumerate the
various lots of land which have been sold off said bottom,
and name the parties to whom conveyed, alleging that said
lots are exempted from the land therein said to be for-
feited for nonentry in the name of said Swann, and that all
the conveyances aforesaid taken together would not exceed
twenty-six acres, and that no more than that should have
been deducted from the boundary originally conveyed up
to and including the year 1887, and that taxes should be
computed at the rate of eighteen dollars and thirty-five
cents per acre upon the said original boundary of land ac-
quired from said Brown and wife, less the said twenty-six
acres, and that the true number of acres could only be as-
certained by a survey of said land.   The plaintiff further
alleges that by deed dated September 5, 1887, Swann and
others conveyed to the Chesapeake & Ohio Railroad Com-
pany a strip of land through said bottom one hundred feet
wide, embracing therein the railroad track of said com-
pany, and on September 3, 1889, said Swann and others

conveyed to said Chesapeake & Ohio Railroad Company two parcels of land part of said forfeited land, to-wit, twenty and seventy-four one-hundredths and one and ninety-six one-hunderdths acres, also certain rights of way and privileges therein set out; but the plaintiff charges that all rights, privileges, and interests in any of said land mentioned, in or conveyed by any or either of said last three deeds, are subject to the forfeiture aforesaid, and are liable to sale for the benefit of the school fund, as part of said forfeited land; that said lands have been regularly reported as forfeited by the commissioner of school lands, and a record thereof made as required by law, and the same are liable for sale for the benefit of the school fund; that neither of said tracts, or any part thereof, has been redeemed from said forfeiture, nor is it or any part thereof claimed by any person under section 3 of Art. XIII. of the Constitution of the State; and prays that said lands be decreed to be sold for the benefit of the school fund, under the provisions of chapter 105 of the Code of West Virginia, as last amended and re-enacted. The defendant T. B. Swann demurred to plaintiff's bill, also tendered his answer to same, which answer was excepted to by plaintiff. The demurrer was overruled, and the exceptions sustained to said answer. The report of Master Commissioner McClintic was filed, and a survey directed, to ascertain the number of acres in said tract, the various parcels sold, and the character of the land, whether bottom or hill. Depositions were taken in the cause, and the reports of the surveyor and commissioner were returned, which latter was excepted to by said Swann. On the 18th of December, 1895, the cause was heard, the plea tendered by the defendant was rejected, the exceptions taken to the commissioner's report were overruled, and said report approved and confirmed, the court ordered and decreed that the tract set out in the bill as the Valcoulon tract in the name of T. B. Swann was and is forfeited to the State for nonentry on the land books for more than five successive years, and that said tract so forfeited contains seven hundred and seventy-six and one-half acres, exclusive of the lots heretofore sold by said Swann, and not embraced in the bill, and that deducting from said seven

hundred. and seventy-six and one-half acres the twenty-two and seventy-one hundredths acres sold to the Chesapeake & Ohio Railroad Company, heretofore exonerated and discharged by a former decree of said court, there were seven hundred and fifty-three and eight tenths acres liable to sale pursuant to the provisions of chapter 105 of the Code, as last amended and re-enacted, ascertained the taxes and interest due thereon, and directed that unless the former owner of said tract, or some one for him, having the right under the statute in such cases made and provided, should redeem the same within twenty days from the date of the decree, that a commissioner therein named should sell the same upon the terms and in manner therein prescribed; and from this decree said Swann obtained this appeal.

The appellant claims that the circuit court erred in rejecting his plea which avers that section 39 of chapter 31 of the Code is unwarranted and not authorized by Art. XIII. of the Constitution of West Virginia, which does not give the Legislature the power to forfeit or confiscate a tract of land of less than one thousand acres, and the tract now proceeded against is not over seven hundred or eight hundred acres, and said act is in direct conflict with Art. XIII, Sec. 10., of the Constitution, and forfeits his land without any pretense of judicial inquiry or judicial proceeding, and is obnoxious to the fourteenth amendment of the Constitution of the United States, as well as Art. I. Sec. 10, of the same. Some of the questions raised by this plea were presented to this Court in the case recently decided of *State* v. *Sponaugle*, 45 W. Va. 415, (32 S. E. 283), in which it was held that "that clause of Sec. 6, Art. XIII. of the State Constitution, forfeiting land for the failure of the owner to enter it for taxation is not in violation of that clause of the fourteenth amendment of the federal constitution restraining states from depriving any person of life, liberty, or property without due process of law;" also that "due process of law does not always require judicial hearing. It does in matters of purely judicial nature, but not in matters of taxation, or matters purely administrative."

It appears that the appellant T. B. Swann was, on the

4th of April, 1882, by virtue of an order of the circuit court of Kanawha County, in the case of S. C. Burdett, commissioner, against seven hundred an forty-two acres of land formerly owned by said Swann, reinvested with the title to said land so far as the title was in him prior to the forfeiture and sale thereof in 1879, and, such being the case, it became and was his duty to have said tract of land placed upon the land books of Kanawha County, and assessed to him for the purpose of taxation; and, having failed to do so for five successive years, as set out in the bill, the land became forfeited, and this proceeding was instituted against it, under section 39 of chapter 31 of the Code. It is, however, contended by counsel for the appellant that this section of the statute is unconstitutional, in so far as it authorizes the forfeiture and sale of tracts of land of less than one thousand acres, because section 6 of Art. XIII. of the Constitution provides that "when, for any five successive years after the year 1869, the owner of any tract of land containing one thousand acres or more, shall not have been charged on such books with State tax on said land, then by operation hereof the land shall be forfeited and the title thereto vest in the State." Does this provision of the Constitution, by implication, inhibit the Legislature from the passage of an act providing that "when, for any five successive years since the 9th day of April, 1893, the owner of any tract or lot of land less in quantity that 1,000 acres shall not have been charged on such books with state tax on said land, then by operation of law, and without any proceedings therefor, the land shall be forfeited, and the title thereto vested in the State"? The provision of the Constitution above quoted is complete in itself, and requires no act of the Legislature to aid in constituting a forfeiture of a tract that contains one thousand acres or more, if the owner fails for five years successively to have it entered on the land books after the year 1869. Does it prevent the Legislature from passing the statue above quoted? In other words, when such statute is passed forfeiting a less number of acres than one thousand, for nonentry for five successive years after April 9, 1873, does it violate any express or implied provision of the Contsitution? I think not, and can see no good reason why a man

owning nine hundred and ninety acres of land who neglects to have it entered on the land books for five successive years should be protected from the forfeiture, when one holding one thousand and five is not. What is there to prevent the constitutional provision and the statute from standing together? The provision in the Constitution that tracts of land containing one thousand acres or more shall be forfeited for nonentry does not prevent the Legislature from passing a law forfeiting a less number of acres for the same cause. In the case of *State* v. *Dent*, 25 W. Va. 19, GREEN, JUDGE, delivering the opinion of the Court says: "Article VI., Sec. 1, of our Constitution provides, 'The legislative power shall be vested in a senate and house of delegates.' This obviously confers on them all legislative power, except such as they are prohibited by the Constitution in its other provisions from exercising." So, also, in 6 Am. & Eng. Enc. Law, 934, under "Constitutional Law," it is said: "Under most state constitutions, the exercise of all the usually recognized powers of legislation is valid, unless actually prohibited or expressly excepted."

In the case of *State* v. *Dent, supra*, JUDGE GREEN quotes approvingly from Cooley on Constitutional Limitations ,as follows: "Any legislative act which does not encroach upon the powers apportioned to other departments of the government, being *prima facie* valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the Constitution, and the case shown to come within them." In *Osburn* v. *Staley*, 5 W. Va. 85, 4th point of syllabus, this Court held that: "While the legislature is governed by the spirit of the Constitution, the courts cannot declare an act of the legislature invalid, unless its invalidity is placed beyond a reasonable doubt. A reasonable doubt must be solved in favor of the legislative action, and the act be sustained. The courts must be guided by the express words of the constitution, and not by its supposed spirit. Whenever an act of legislature can be so construed as to avoid conflict with the Constitution, and give it force of law, such construction will be adopted by the courts." On this point, Cooley, Const. Lim. (6th Ed.) p. 204, states the law thus: "Nor are the courts at

liberty to declare an act void because in their opinion it is opposed to the spirit supposed to pervade the constitution, but not expressed in words. When the fundamental law has not limited, either in terms or by necessary implication, the general powers conferred upon the legislature, we cannot declare a limitation under the notion of having discovered something in the spirit of the constitution which is not even mentioned in the instrument. 'It is difficult,' says Mr. Senator Verplanck, 'upon any general principles to limit the omnipotence of the sovereign legislative power by judicial interposition, except so far as the express words of a written constitution give that authority.' "

Now, at the time this constitutional provision was adopted, in 1872, the act of March 4, 1869, was in force, which provided generally that, "when any person owning real estate has not, or shall not have for five successive years been charged on such books with such taxes on such real estate, the same and all the title, right and interest of the owner, legal and equitable, thereto shall without any proceeding be absolutely forfeited to and vested in this State." In April, 1873, however, the Legislature thought it necessary to provide for the forfeiture of tracts of land containing less than one thousand acres, in the same section, for nonentry on the land for five successive years, and it is clear that, in enacting the latter provision, it did not do anything in variance with the express words of the Constitution.

It is claimed by counsel for the appellant that the statutes providing for the forfeiture of lands for nonentry upon the books are unconstitutional, for the reason that they deprive the party of his property without due process of law. Counsel for the State, however, have collated the statutes in reference to the collection of taxes on real estate, and shown that as early as 1803 an act was passed in Virginia providing that, "when the taxes upon any tract or survey of land shall have remained unpaid for two years, such tract or survey of land should be forfeited to the commonwealth," etc., which act was amended and re-enacted in 1807, 1809, and 1810; the last-named statute forfeiting the land for failure for eighteen months after the passage of the act, and appointing the high sheriff, the

clerk of the superior court of law, and the attorney for the commonwealth in each county, or any two of them, commissioners to sell the lands so forfeited, and make deeds to purchasers. This law was also amended in 1814, 1832, and 1835, and at the July term, 1853, of the court of appeals of Virginia, in the case of *Wild's Lessee* v. *Serpell*, 10 Grat. 405, it was held, Judge Lee delivering the opinion of the court, that, "the statutes of Virginia forfeiting lands to the commonwealth for the failure of the owners to enter upon the commissioner's books and pay the taxes due thereon are constitutional"; that "the forfeiture under these statues is perfected without judgment, decree, or other matter of record, or an inquest of office; but, by the operation of the statutes, the title is devested out of the owner, and is vested in the commonwealth." The same in substance, was decided by that court in *Staats* v. *Board*, (at the same term) *Id.* 400. See, also, *Hale* v. *Branscum*, *Id.* 418, and *Levasser* v. *Washburn*, 11 Grat. 572.

In the case of *McClure* v. *Maitland*, 24 W. Va. 561, it was held that "the proceedings provided by chapter 134 of the Acts of 1872-73 for the sale of lands for the benefit of the school fund are not judicial proceedings in the sense that they involve litigation between contesting parties," etc. The act of February 23, 1893, however, provided that the former owner, etc., might at any time during the pendency of the suit for the sale thereof, and before a decree of confirmation has been entered, file his petition, etc., and by section 22 it is provided that he may appeal, etc., so that an opportunity is thus afforded the former owner to be fully heard. In the case of *Yokum* v. *Fickey*, 37 W. Va. 7 62, (17 S. E. 318), it was held that, "In such cases to enter and pay taxes due on land, and the damages in the manner prescribed by the act of February 27, 1835, caused the forfeiture to become absolute and complete, and no inquisition, judicial proceeding, or inquest or finding of any kind was necessary to consummate such forfeiture." The same ruling holds good as to forfeiture under the act we are now considering. In the case of *King* v. *Mullins*, 17 U. S. 404, (18 Sup. Ct. 925), recently decided, the first point of the syllabus holds that: "The system established by

the State of West Virginia, under which lands liable to taxation are forfeited to the state by reason of the owner not having them placed, or caused to be placed during five consecutive years on the proper land books for taxation and caused himself to be charged with the taxes thereon and under which on petition required to be filed by the representative of the State in the proper circuit court such lands are sold for the benefit of the school fund with the liberty of the owner upon due notice of the proceedings to intervene by petition and secure a redemption of his lands from the forfeiture declared by paying the taxes and charges due upon them is not inconsistent with the due process of law required by the constitution of the United States or the constitution of the state."

The appellant claims that he made application to Sinnett, the assessor in 1883, to place this land on the land books; but Mr. Sinnett, in his deposition, states that he has no recollection of the appellant telling him to put these lands on the assessor's books, but his recollection is that said land was not on the land books in 1882, and the auditor directed him where he found lands off the land books to make a separate list of them. But the appellant certainly knew that these lands were not on the land books, for the reason that no tax tickets came out against him for them, and he allowed them to remain off the books year after year, without making any effort to have them so entered for nine or ten years, and when this proceeding is instituted, to sell the land as forfeited, seeks to shelter himself under the claim that nine or ten years before he had asked the assessor to enter the lands upon the land books. If parties owning land could in this way shirk the responsibility of contributing to the state revenue and still retain their lands, many valuable tracts would be found missing from the land books.

The appellant also assigns as error that the decree directing the sale of this land did not require the commissioner appointed to make the sale to give bond before proceeding to make the sale as required by statute. In this, however he is mistaken, as the decree expressly requires the special commissioner to give a bond, before the clerk of the court with approved security, in the penalty of five

thousand dollars, conditioned according to law. Having considered all of the points suggested by the assignments of error, my conclusion is that the circuit court committed no error in directing a sale of the lands on the bill mentioned. The decree complained of is therefore affirmed, and the cause remanded, with costs and damages to the appellee.

BRANNON, JUDGE, (*dissenting*):

I think that all acts since the Constitution of 1872, forfeiting tracts less than one thousand acres for nonentry are unconstitutional, for reasons given in *Industrial Co.* v. *Schultz*, 43, W. Va. 470, (27 S. E. 255). At its adoption the act of 1869 forfeited such tracts for past and future omission. Did it not repeal that act so that no forfeiture of those tracts could take place under it in future, and prohibit new acts doing so? If that act was repealed by it, how could a new act be any more valid?

*Affirmed.*