# CHARLESTON.

STATE *v.* MATHEWS *el al.*

RICHARDS *et als. v.* MONTGOMERY *et als.*

Submitted March 24, 1909.    Decided November 1, 1910.

1. TAXATION—*Purchased by State—Interest Acquired.*

When land is sold for delinquent taxes, assessed thereon in the name of the owner of a freehold estate therein less than the fee, and is purchased by the state and not redeemed within one year thereafter, the state thereby acquires not only the estate of the person assessed with the taxes but also the estate of the reversioner or remainderman.

2. SAME—*Sale of Forfeited Land for Benefit of Schools—Title Conveyed.*

A sale and conveyance of the state's land in the manner provided by chapter 105, Code 1906, creates a new title, and estops the state from again selling the same land unless there be a forfeiture of the new title.

3. SAME—*Sale of Forfeited Land for Benefit of School Fund—Title of Purchaser—Curative Statute.*

Section 19 of chapter 105, Code 1906, is retroactive and curative. It is designed to validate, and to make good, the titles of purchasers of the State's lands which they have acquired through defective proceedings, or deeds, under chapter 105. Said section has the force of a legislative grant of the State's land to all such purchasers thereof prior to the time when

chapter 42, Acts 1905, took effect, and who have, since their purchase, kept the taxes paid on said land.

4. SAME.

Said section operates to vest in such purchasers, who have paid all the purchase money, all the title the state had in the land at the date of the sale or conveyance, notwithstanding the proceeding to sell the land may not have been brought against the person, or persons, having the right of redemption.

5. SAME—*Non-entry of Lands on Land Books—Forfeitures—Statutory Provisions—"Since".*

The words, "since the ninth day of April one thousand eight hundred and seventy three," occurring in section 39 of chapter 31, Code 1906, mean all time after the 9th of April, 1873.

6. SAME—*Right to Remedy.*

One having neither title to, nor right to redeem, land can not maintain a suit in equity respecting same.

Appeal from Circuit Court, Fayette County.

Consolidated actions by the State against A. F. Mathews and others, and by J. M. Richards and others ageinst Alma Montgomery and others. From the decree, Alma Montgomery and others appeai.

*Reversed and Rendered.*

*Brown, Jackson & Knight* and *Payne & Hamilton,* for appellants.

*Maynard F. Stiles,* for appellees.

WILLIAMS, JUDGE:

Alma Montgomery and others have appealed from a decree of the circuit court of Fayette county, made on December 6, 1907, permitting L. E. Poteet and E. L. Nuckols to redeem from alleged forfeiture a tract of 100 acres of land claimed by appellants.

Peachy Williams became the owner in 1865 of a larger tract of land and in 1869 she and her husband, Linas Williams, attempted to convey out of it the 100 acres in question, in fee, to Elias Lively. This deed is inoperative as a conveyance of the wife's interest, because of defects in the certificate of her acknowledgment. Linas Williams died in 1895, and his wife Peachy died prior thereto. Poteet and Nuckols claim the land

by *mesne* conveyances from the heirs of Peachy Williams. The first deed bears date March 1, 1897, and was made to J. M. Richards for the undivided half. Richards and wife conveyed same to E. L. Poteet and E. L. Nuckols March 16, 1903. The heirs of Peachy Williams conveyed the other half to M. F. Gunnoe by deed August 29, 1902, and Gunnoe and wife conveyed same to Poteet and Nuckols on December 6, 1902.

Appellants claim title to the same land as follows, viz: deed from H. A. Robson, commissioner of school lands, to J. M. Johnson, May 28, 1890; J. M. Johnson and wife to Meredith Settle, July 1, 1891; and Meredith Settle to appellants, February 18, 1901. In order to ascertain the State's title, and what right, if any, it had to sell the land in 1890 we must return to the deed made by Peachy Williams and her husband in 1869 to Elias Lively. Notwithstanding this deed was inoperative to convey the wife's fee simple estate, it nevertheless purported to convey the fee; and Elias Lively and wife conveyed it to M. A. Fisher, January 16, 1871. M. A. Fisher made no conveyance of the land, and died intestate in 1874, leaving two children— Mary A., who married Elias Humphreys, and Eliza J., who married Joseph Woods. L. E. Poteet and E. L. Nuckols also claim, by *mesne* conveyances from these two heirs of Margaret A. Fisher, whatever title or right, if any, in the land descended to them on the death of their mother. The land does not appear to have been, for any considerable length of time, in the actual possession of any one. The state, claiming the land by virtue of delinquent tax sales made in the name of M. A. Fisher prior to 1890, in that year proceeded by H. A. Robson, commissioner of school lands, to sell it, and did sell it at public sale to J. M. Johnson at the price of $250; and on the 28th of May, 1890, said Johnson received from the commissioner a deed. Whatever title was thereby vested in J. M. Johnson has passed by the several *mesne* conveyances to appellants, as above set forth.

At April rules, 1902, another commissioner of school lands, successor to H. A. Robson, filed a petition against this land, again alleging its forfeiture to the state in the name of M. A. Fisher's heirs for non-entry from 1885 to 1902. This petition is against "the unknown heirs of M. A. Fisher dec'd.," and avers their right to redeem. These appellants filed their petition in that proceeding averring their title and the manner of its ac-

quisition. The cause was heard on said petition on the 27th of May, 1902, and a decree was made which held that appellants had paid to the commissioner of school lands $71.75, the taxes, interest and costs due on the land for the years 1888, 1889, 1890 and 1896, being the years for which the court found the taxes unpaid, and a redemption by said appellants was decreed. The court, at a subsequent term, May 23, 1903, ignored this decree and referred the cause to a commissioner, to ascertain and report whether, or not the tract of land was forfeited to the state, and if so in whose name; the amount of taxes and costs due the state; whether any person was in a position to take the benefit of the forfeiture under section 3, Article XIII of the Constitution, and who, if any, of the defendants was entitled to redeem.

Shortly before this decree of reference was made L. E. Poteet and E. L. Nuckols had filed their joint petition in the cause, praying to be allowed to redeem. And J. M. Richards had, in June 1902, filed an original bill against appellants praying for a cancellation of the deeds through which they claimed title A demurrer to this bill was sustained; and at the November rules, 1903, a joint amended bill was filed by said Richards, Poteet and Nuckols. Appellants demurred to, and answered, the amended bill, and the two causes were heard together upon the pleadings, petition, the reports of the commissioner, exceptions thereto, and depositions of witnesses; and on the 6th of December, 1907, the decree complained of was made.

The commissioner reported that the land had been sold three times for delinquent taxes in the name of M: A. Fisher; first in 1881, second in 1886, and again in January 1888; that it had not been redeemed and was forfeited to the State; that it had been stricken from the land books in 1886, and did not thereafter appear until 1891 when it was charged to J. M. Johnson; that it was sold in May 1890 by H. A. Robson, commissioner of school lands, and purchased by J. M. Johnson at the price of $250; that on the 28th of May, 1890, said commissioner conveyed it to said Johnson by deed. This portion of the commissioner's report is not excepted to, and being a report upon matters of fact, must be taken as true. *Chapman* v. *Pittsburg & S. R. Co.,* 18 W. Va. 184; *Ward* v. *Ward,* 21 *Id.* 262; *Lynch* v. *Henry,* 25 *Id.* 416; *Chapman* v. *McMillan,* 27 *Id.* 220; *Poling* v. *Huffman,* 48 *Id.* 639. The report also ascertains that M. A.

Fisher was the owner of an estate during the life of Linas Williams only, and finds that upon his death the estate in remainder in the 100 acres of land passed to the heirs of Peachy Williams. The commissioner furthermore reported that, inasmuch as M. A. Fisher had an estate in the land only during the life of Linas Williams, the state acquired, by the purchase for delinquent taxes and the failure of the owner to redeem, no greater estate than she had, and that L. E. Poteet and E. L. Nuckols, having acquired the estate in remainder from the heirs of Peachy Williams, had the right of redemption. This presents the principal legal question involved, and was excepted to by appellants. But their exceptions were overruled and the report confirmed.

The principal error we find is in the court's holding that, by the tax sale, and forfeiture, the State did not acquire title to an estate in fee in the land. Some of the other errors assigned result from the effort of the court to apply this erroneous principle in determining the rights of the petitioners.

Appellees, in brief of counsel, deny that there was any forfeiture. But they are stopped from denying a forfeiture for two reasons, (1) in the original bill filed by J. M. Richards the forfeiture is alleged, and the amended bill filed by him, Poteet and Nuckols jointly, adopts this allegation. They have thus admitted it by their pleadings. (2) The commissioner reports that the State purchased the land for delinquent taxes and that it was not redeemed and there is no exception to this finding. Moreover, it appears from the report that the land was off the books from 1886 to 1890, both inclusive. This, of course, works a forfeiture. But counsel insists that the whole of the year 1890 would be necessary to complete the forfeiture, and that the land was sold by the State to Johnson in May of that year. In reply to this point we say that in order for the land to appear on the land books for assessment purposes for 1890, it must have been entered thereon before the first of April, as the law then was, and not appearing on the books on the first of April, 1890, it was properly regarded as not appearing on the books for that assessment year. But the State's title did not depend wholly upon a forfeiture for non-entry. It was a purchaser of the land for delinquent taxes. The commissioner reported that it had been sold long prior to that time, as many as three times, for delinquent taxes in the name of M. A. Fisher, and each time was

purchased by the State, and that it had not been redeemed. This portion of the report is not excepted to. Why the land was so often sold for taxes in the name of the same owner does not appear; nor is this question material, since the state was the purchaser at each of the sales, and no one claims to have redeemed the land from the state.

The important question is, what estate in the land did the state acquire? It is admitted that, according to the decisions of this Court, notably in *Laidley* v. *Land Co.,* 30 W. Va. 505, and *Central Land Co.* v. *Laidley,* 32 W. Va. 134, Elias Lively acquired no greater estate in the land under his deed from Peachy Williams and her husband, than an estate for the life of Linas Williams, because of the fatal omissions in the certificate of acknowledgment to the deed by the married woman. The deed from Elias Lively and wife to Margaret A. Fisher could convey no greater estate than this. Margaret A. Fisher was therefore the owner of an estate in the land only during the life of Linas Williams. But this is a freehold estate, 2 Min. Inst. 71 and 1 Bouvier's Law Dic. p. 693; and section 54, chapter 29, Code of West Virginia, treats the person who has the freehold estate as the owner of the land for purposes of taxation. The full value of the land in fee is assessed for taxation against such freeholder, and the payment of taxes by him protects from sale and forfeiture the estate in reversion, or remainder. On the other hand, his failure to pay the taxes, or to keep the land on the assessor's books, will render the entire estate in the land liable to be sold, or to become forfeited. Our assessment laws make no provision for separating the two estates, and valuing each to its respective owner, in case one has the life estate and the other the remainder in fee. When the plan of assessing the land itself, and not simply an estate therein, is pursued by law, there seems to be no question of the right of a state legislature to provide for the sale, and forfeiture of the fee simple estate, on the failure of the life tenant, who is assessed with the taxes, to pay the same and to keep the land on the land books. Cooley on Taxation, 960; Black on Tax Titles, sec 421. Has our legislature made such provision? Section 25, chapter 31, Code of West Virginia 1906, is in part as follows, viz: "When the purchaser of any real estate so sold, and not redeemed as aforesaid, his assignee, or heirs or devisees,

shall have obtained a deed therefor according to the provisions of this chapter and caused the same to be admitted to record in the office of the clerk of the county court of any county in which such real estate or any part thereof may be, such right title and interest in and to said real estate as was vested in the person or persons charged 'with the taxes thereon for which it was sold, at the commencement of, or at any time during the year or years for which said taxes were assessed, *and all such right, title and interest therein of any other person or persons having title thereto,* who have not in his or their own name been charged on the land books of the proper county or assessment district, with the taxes chargeable on such real estate for the year or years for the taxes of which the same was sold, and have actually paid the same as required by law, shall be transferred and vested in the grantee in such deed." This language is comprehensive enough to include an estate in remainder, or in reversion, as well as the title of the person in whose name the land is assessed and for whose delinquency it is sold. In our opinion the statute was designed to transfer to the tax purchaser the entire estate in the land. The effect of the statute is to create in the tax purchaser who obtains a deed a new estate, equivalent to a new grant from the commonwealth. *Coal Co.* v. *Howell,* 36 W. Va. 490; *Cecil* v. *Clark,* 44 W. Va. 659; *State* v. *Harman,* 57 W. Va. 447; *Simpson* v. *Edminston,* 23 W. Va. 675; and *State* v. *West Branch Lumber Co.,* 64 W. Va. 673.

Section 32 of same chapter operates, in cases of tax purchases made on behalf of the state, to invest the state, on the failure of the former owner to redeem within one year, with "such estate, right, title and interest in the real estate mentioned in such lists as would have been vested in an individual purchaser thereof at such sale who had obtained proper deeds therefor and caused them to be admitted to record in the proper office." In view of these statutes, the State acquired by its purchase at the delinquent tax sale, not only the estate of Margaret A. Fisher for the life of Linas Williams, but also the estate in remainder of Peachy Williams and her heirs.

It is admitted that neither Peachy Williams, nor her heirs, have had the land assessed 'with taxes in her, or their names, and that they have paid no taxes chargeable thereon since

1869. But it is insisted that the court was without jurisdiction to sell the land because of failure to make the proper claimants parties to the proceeding. State's petition alleged that the land was forfeited in the name of M. A. Fisher, and the sheriff's return of summons shows that it was served on one M. A. Fisher. But this return was permitted to be amended in the present suit; and the amended return shows that it was not served on the M. A. Fisher in whose name the land was assessed. Moreover, depositions were taken and filed which prove that Margaret A. Fisher, the owner of the land, died in the year 1874. Appellants insist that it was error to permit the return to be amended after so long lapse of time. We do not think so. Both the courts of Virginia and West Virginia are very liberal in the matter of permitting officers to amend their returns on processes of the court. This is a very different question from allowing a party to contradict the officer's return. *Stone* v. *Wilson,* 10 Grat. 533; *Wardsworth* v. *Miller,* 4 Grat. 99; *Smith* v. *Triplett,* 4 Leigh 590; *Laidley* v. *Bright,* 17 W. Va.. 792; *Capehart* v. *Cunningham,* 12 W. Va. 750; *State* v. *Martin,* 38 W. Va. 568; *Hopkins* v. *B. & O. R. R. Co.,* 42 W. Va. 535; *S. V. R. R. Co.* v. *Ashby,* 86 Va. 239; *Lumber Co.* v. *Brooks,* 46 W. Va.732. In the present case the return was amended by G. W. McVey who was the sheriff who made the service. The amended return relates back to the time of service. See authorities above cited. The amendment shows that the wrong person was served with the summons, and it was not error to permit the return to be corrected so as to show the true state of facts.

But we think subsequent legislation has cured whatever defect in the state's title there was, if any, for failure to make the heirs of Margaret A. Fisher, deceased, parties to the state's petition; and, therefore, we are not called upon to decide what effect such omission would otherwise have had on the title. The legislature has a constitutional right to provide for the sale of the state's lands, either by a proceeding *ex parte* and ministerial, or by a judicial proceeding *inter partes,* regardless of the means by which the state acquired title. In fact, prior to the enactment of chapter 95, Acts 1882, amending the law concerning proceedings for the sale of the state's land, there was no provision for making the former owner, or claimant, a party. The

proceeding was then, in its nature, purely ministerial and *ex parte.* *McClure* v. *Maitland,* 24 W. Va. 561. But by chapter 95, Acts 1882, the proceeding has been made *inter partes,* and is now, in its nature, judicial, or at least *quasi* judicial. *Wiant* v. *Hayes* 38 W. Va. 681; *Starr* v. *Sampselle,* 55 W. Va. 442. But the right of redemption being a mere grace extended to the former owner by the state, *McClure* v. *Maitland,* 24 W. Va. 561 and *State* v. *King,* 64 W. Va. 546, it follows that the former owner's right to be made a party to the state's petition is subject entirely to the will of the legislature. It could at any time revoke the right, or privilege, to be made a party; or it could cure any defect in the proceeding resulting from a failure to make the former owner a party. Chapter 42, Acts 1905, was designed, we think to cure the defect here complained of. The act amends section 6 and 19 of chapter 105 of the Code; and section 19, as thus amended, reads, in part, as follows: "Whatever right, title, interest and estate the state of West Virginia had to any lands at the date of the sale or conveyance thereof, or instrument purporting to convey the same heretofore made by said state through and by the commissioner of school lands of any county, under an order or decree of the circuit court in any suit or proceeding under said chapter one hundred and five of the code, however derived or claimed, shall be deemed and held to have passed to and vested in the grantee thereof, whether the land so sold was proceeded against as forfeited, escheated, or as waste and unappropriated land, notwithstanding any irregularity or error in such proceeding or informality in such sale or conveyance or purported conveyance, *or want of jurisdiction in the court to decree such sale.* And all such sales and conveyances and purported conveyances are hereby confirmed and made good and valid A copy of such conveyance or purported conveyance duly certified from the record thereof shall be evidence of such proceeding and sale. And in the absence of an allegation and proof by the state to the contrary it shall be presumed that said land so sold and conveyed, or purporting to be sold and conveyed, was entered upon the land books of the county where situated and has not become forfeited for any cause or liable to sale. And if such land so sold and conveyed, or purporting to be, was entered upon the land books after the rec-

ordation of such conveyance or purported conveyance and the grantee, his heirs, devisees or assigns, have paid all taxes assessed thereon since such entry for a period of at least five successive years and such land is not at the date of the passage of this amendatory act forfeited for any cause in the name of such grantee, his heirs, devisees and assigns, then all the right, title, interest and estate which the said state of West Virginia may since such sale as aforesaid have derived thereto under the constitution and laws of the state by the forfeiture or escheat of any other title or claim of title to such land or otherwise shall be and is hereby granted and relinquished to such grantee, his heirs, devisees or assigns, and in all such sales and deeds hereafter made under the provisions of this chapter, the purchaser of such lands, his heirs, devisees or assigns, who complies with the terms of the sale and obtains a deed for the land so sold, shall be vested from and after the date of such deed with all title to said lands previously vested in the state immediately before; and it shall be the duty of every such court to make all necessary and proper orders and decrees to carry every such sale and purchase into full force and effect where the terms thereof have been or shall be fully complied with."

This act is expressly retroactive, and it cures any defects in proceedings had to sell the state's land prior to the passage of the act. It does not cure defects resulting only from mere error, but it extends to and cures defects which relate to jurisdiction. The language is "notwithstanding any irregularity or error in such proceeding or informality in such sale or conveyance, *or want of jurisdiction in the court to decree such sale.*" It goes even farther than this, and vests in the purchaser all other title which the state may thereafter have acquired, provided the purchaser has not suffered his own title to become forfeited. This statute completely estops the state, after it has once sold the land, from proceeding to sell it again under any claim thereto whatever, except for a subsequent forfeiture of the title of the purchaser or those claiming under him. See also *State* v. *Jackson,* 56 W. Va. 558; *State* v. *King,* 64 W. Va. 546; and *Cecil* v. *Clark,* 44 W. Va. opinion on pages 674-675 and 676. Although these cases were decided before the statute, we are now considering was passed,

yet they are apropos to the question of estoppel upon the state by proceedings instituted in its behalf, whether the proceedings be ministerial or judicial, and they are cited in support of the general doctrine of estoppel. The statute above quoted was designed to quiet titles to lands acquired from the state, and it operates chiefly upon the state's rights. So far as the state is concerned, it cures even want of jurisdiction to sell. The only apparently essential question now is, did the state have title? Of course the statute could not operate to divest persons of their title, who were not parties to the state's proceeding, and whose title was superior to that of the state. But appellees do not occupy such a position. They claim no title to the land whatever. They claim only the right to redeem a title which they admit is in the state by forfeiture. But the title which they claim is no longer in the state. If it did not pass to J. M. Johnson by the commissioner's deed in 1890, it was unquestionably transferred to those claiming under J. M. Johnson by the curative act of 1905.

In 1902 the state was without title to the land and should not have brought the present suit. It is a fundamental principle, that in order to authorize the state to institute proceedings under chapter 105 of the code for the sale of its land, it must have title. We do not understand this to mean, however, that the state must have the only title, or even the best title to the land. But when it proceeds against land as forfeited it must show itself to be the owner of, at least, some forfeited title. Section 1 of chapter 105, Code; *Twiggs* v. *Chevallie*, 4 W. Va. 463; *Strader* v. *Goff*, 6 W. Va. 257; *State* v. *Collins*, 48 W. Va. 64; and *State* v. *Jackson*, 56 W. Va. 558. By the present suit the state is proceeding against the same land, claiming it as forfeited in the name of M. A. Fisher's heirs, that it sold and conveyed by commissioner's deed to J. M. Johnson in 1890, as forfeited in the name of M. A. Fisher. The state is claiming the right to sell the land the second time on account of the same forfeited title. It is estopped from doing so. *State* v. *Jackson*, 56 W. Va. 558; and *State* v. *King*, 65 W. Va. 611, (Pt. 2 Syl.); and *Id.* 546 (Pt. 17 Syl.).

There was no forfeiture of the title which J. M. Johnson acquired from the state. The face of the decree made in May, 1902, permitting these appellants to redeem shows there had

been no forfeiture of their title. The decree recites that taxes
were due and unpaid on the land for the years, 1888, 1889, 1890
and 1896, and the court apparently treated the omission to pay
taxes for these years as working a forfeiture and decreed a re-
demption in favor of these appellants on their paying the taxes
for those omitted years. The state did not even have a right
to collect the taxes for the three first mentioned years, because
they were satisfied by the sale to J. M. Johnson in May 1890.
But even if there had been a forfeiture to the Johnson title,
those claiming under it would have had the right to redeem in
preference to any other claimant of the land whose title was
forfeited to, and vested in, the state prior to the conveyance to
Johnson, and such redemption would have restored to them
such title as Johnson had acquired by his purchase from the
state. Sec. 17, Ch. 105; *State* v. *King,* 64 W. Va. 610; (Pt.
3 Syl.).

The court entertained the prevent suit apparently upon the
theory that the state had acquired only such title in the land
as was vested in M. A. Fisher at the time of the forfeiture;
that by the proceeding in 1890 J. M. Johnson acquired no great-
er title than this; and, consequently, that the title of Peachy
Williams, and her heirs, to the estate in remainder was for-
feited for non-entry after the death of Linas Williams, which
occurred in 1895; and that the state had a right to dispose of
such estate in remainder in fee. But, as we have before stated,
this theory of the law is incorrect, At the time of the sale
to Johnson the state was seized of an estate in fee in the land,
and by deed to Johnson in 1890 he acquired all the title then
in the state.

For the reasons hereinbefore given, the independent suit
brought by Richards, Poteet and Nuckols, against these appel-
lants, and which was united with the state's proceeding, should
have been dismissed. Plaintiffs had neither title to the land
nor right to redeem, and, therefore, no standing in court. *Des-
pard* v. *Pearcy,* 65 W. Va. 140.

It is insisted that the deed from the commissioner to J. M.
Johnson is void for want of proper description of the land con-
veyed. The deed describes the land as "a tract of 100 acres
of land situate in Fayetteville District on Mossey Creek, Fay-
ette County, West Virginia." Moreover, it refers to the com-

missioner's report and other papers in the proceeding "for further and more accurate description." Description is for the purpose of identifying the land conveyed; and we think this description is sufficient. The report of commissioner Van Pelt, filed before the sale to Johnson, describes the land by referring to the Lively deed to Fisher, by its date, and book and page where recorded. According to the legal maxim, that is certain which is capable of being made certain. *Thorn* v. *Phares*, 35 W. Va. 771.

Counsel for appellees, in his brief, insists that the payment of the taxes on the land since the purchase by J. M. Johnson, by those claiming under him, has prevented a forfeiture of the Peachy Williams title. But we have already found that, by the purchase of the land under the delinquent tax sale and the failure of the owner to redeem, the state acquired the entire estate, the fee simple in the land. Moreover, the amended bill filed by appellees, as well as the original bill filed by J. M. Richards, admits a forfeiture and prays that plaintiffs may be allowed to redeem.

Counsel for appellees insists that since the act of 1882, chapter 30, amending and re-enacting chapter 30 of the Code as previously amended and re-enacted by chapter 117 of the Acts of 1872-3, there is no statute forfeiting tracts of land of less than one thousand acres in quantity for non-entry on the land books. We can hardly think counsel is serious in this contention, notwithstanding he has devoted a considerable portion of his brief to a discussion of this point. If such is the state of our law we must admit a surprise to find it so. But we do not think counsel has correctly interpreted the statute. He argues, and with much apparent plausibility, that by the use of the word "since" in that portion of section 39 of the act of 1882, relating to the forfeiture of small tracts of land, which reads as follows: "And when for any five successive years *since* the ninth day of April one thousand eight hundred and seventy three, the owner of any tract or lot of land, less in quantity than one thousand acres." etc., instead of the word "after" as used in the corresponding provision in section 39 of chapter 117 of the Acts of 1872-3, the Legislature intended to limit the time when the forfeiture for non-entry of such smaller tracts should occur to the time between April 9, 1873

and 1882. This position, we think, is wholly untenable. The act of 1872-3 was the first act passed by the legislature after the adoption of the Constitution of 1872, which, by section 6 Article XIII, provided for the forfeiting of tracts of one thousand acres, or more, for failure to enter them on the land books for any five successive years after the year 1869. This statute was designed to put into operation this constitutional provision, and, so far as the act relates to larger tracts of land, it adopts the exact language of the Constitution. But the legislature thought it wise to provide also for forfeiting tracts of land of less than one thousand acres, concerning which the constitution was silent, but it did not wish to make this portion of the act retroactive, as it had done in regard to larger tracts in order to cover the time embraced in said section of the Constitution, hence it made the part of the act relating to small tracts to read as follows: "And when for any five successive years *after* the passage of this act", etc. The word "after", as here used, of course refers to all future time from the passage of the act, which was April 9, 1873. And this Court has held that the provision in the constitution in regard to forfeiting larger tracts created no inhibition upon the legislature in relation to the forfeiting of smaller tracts. *State* v. *Swann,* 46 W. Va. 128. When the legislature came to re-enact this statute in 1882, it made that portion of section 39, forfeiting smaller tracts, read as follows: "And when for any five successive years *since* the ninth day of April one thousand eight hundred and seventy three.", etc. The 9th day of April, 1873, was the date when the first act took effect, and the amendment was intended to be both retroactive and prospective, retroactive so as to embrace the time between the 9th of April, 1873, and the passage of the amended act, and prospective so as to include all future time. It was not the intention of the legislature, by using the word "since" in the amendment, to abolish the forfeiture of smaller tracts after that time, as counsel contends; but its purpose was to preserve the force of the act from the time of its passage in 1873 until its re-enactment in 1882, and also to make it apply to all time in the future. The word "since" is not always limited in meaning to the time between the present and a certain past event, or to a space of time between two certain past events; it some-

times reaches beyond the present, and embraces future time. When used as a preposition, as is the case in the phraseology of the statute, its definition as given by the Standard Dictionary is as follows: "During or within the time after; ever after, or at a time after; from and after the time, occurrence, or existence of." As used in the Act of 1882, it means all time after April 9, 1873.

In the following cases the word "since", as used in certain statutes to define their duration, has been construed by the courts to include time after the passage of the act. *Jones* v. *Bank,* 9 Atl. 22 (Me.); *Roland Park Co.* v. *State,* 31 Atl. 298 (Md.).

The decree complained of will be reversed, and a decree will be entered by this Court sustaining the exceptions taken to the commissioner's report by appellants, and dismissing the State's petition, so far as it relates to the tract of 100 acres of land in question, and also dismissing the bill of J. M. Richards and the amended bill of said Richards, L. E. Poteet and E. L. Nuckolls with costs to appellants against said Richards, L. E. Poteet and E. L. Nuckols in this Court, and also their costs accruing in the court below, since the 22nd day of April, 1902.

*Reversed and Rendered.*