# CHARLESTON.

STATE v. TAYLOR *et als.*

Submitted November 18, 1913.  Decided November 25, 1913.

1. PUBLIC LANDS—*Sale of Forfeited School Lands—Title Conveyed.*
   In order that the purchaser of land at a previous sale of forfeited and delinquent lands may take by transfer under section 3, article 13, of the Constitution, the after acquired title of the State to other lands forfeited, the land sold and conveyed to such previous purchaser must in fact cover such after acquired land. (p. 264).

2. SAME—*Sale of Forfeited School Lands—Decree of Sale—Exception —Binding Effect.*
   A decree of sale entered by consent of the commissioner of school lands on behalf of the State and the claimants of the land forfeited, decreeing such land to be sold but providing certain exceptions therefrom in favor of junior claimants, is binding on such former claimants and on the purchaser at a sale under such decree. (p. 264).

3. SAME—*Sale of Forfeited School Lands—Title Conveyed.*
   In this case the decrees of sale and confirmation and deed to a previous purchaser of forfeited and delinquent land, because of such exceptions therein in favor of such junior claimants, whose titles were not then forfeited, but were valid existing titles, protected under the Constitution, are construed not to cover the land of one of such junior claimants whose title for non-entry and non-payment of taxes for five successive years became subsequently forfeited and vested in the State. (p. 264).

Appeal from Circuit Court, McDowell County.

Suit by the State against W. L. Taylor and others. From the decrees, defendant Pocahontas Coal & Coke Company appeals.

*Affirmed.*

*A. W. Reynolds, Jos. S. Clark* and *Anderson, Strother & Hughes,* for appellant.

*Strother, Taylor & Taylor,* for appellee.

MILLER, JUDGE:

One of the tracts proceeded against by the commissioner of school lands was a tract of 298.73 acres, part of a 595 acre tract, patented to James B. Harman in 1856, and forfeited to the State in the name of defendant Taylor, for non-entry

on the land books from the year 1895 to 1902, and afterwards.

Taylor by answer and petition intervened showing title and sought to redeem his tract from forfeiture, as provided by statute. The Pocahontas Coal and Coke Company, summoned as defendant, appeared and by exceptions to the report of the commissioner to whom the cause was referred, resisted redemption by Taylor of 189.25 acres, part of the 298.73 acres, as being within the boundary of a tract of 150,000 acres, originally patented to Robert Pollard in 1795, but delinquent and sold to the State in the name of William R. Iaeger and A. J. Ulman, for the taxes thereon for the year 1873, and subsequently proceeded against by the commissioner of school lands in 1881, and the residue whereof, after certain exceptions, was, under decree pronounced in that cause at the July Term, 1886, as modified by decree at the October Term, 1886, sold by the commissioner and purchased by and confirmed to William G. W. Iaeger, by decree of confirmation entered at the May Term, 1887, and subsequently conveyed to him, and from whom by sundry mesne conveyances the same had come down to the Pocahontas Coal & Coke Company, unaffected by any subsequent delinquencies or forfeitures, and with all taxes and tax burdens to the state fully discharged.

By decrees of February 22 and March 1, 1909, appealed from, the exceptions of the Pocahontas Coal & Coke Company to the commissioner's report reporting in favor of the right of Taylor to redeem, were overruled, and Taylor and the claimants under him upon payment of the taxes and costs, adjudged to have been paid, were exonerated from all taxes in arrears, and were decreed redemption of the land.

Certain matters of law and fact are conceded, and are not within the range of the controversies on this appeal. It is conceded that the 189.25 acres, part of the 298.73 acres, part of the Harman patent of 1856, is within the boundary of the original patent to Pollard for the 150,000 acres; that the title to the 150,000 acre tract became invested in the State by sale and purchase thereof for the delinquent taxes thereon for the year 1873; that at the time of the investment of that title in the State, and before the sale and purchase of the residue of the 150,000 acres by Iaeger in 1886, the owners of the Harman

tract took' the title of the State to the interlock of 189.25 acres involved in this suit, by transfer, under section 3, article 13, of the Constitution.

It is furthermore conceded that the patent calls of the 150,000 acre tract, under which, through Iaeger, the purchaser at the sale by the commissioner of school lands in 1886, the Pocahontas Coal & Coke Company, claims title, include the 189.25 acres in controversy, and unless this tract was by the decree of sale and confirmation, and the deed to Iaeger made pursuant thereto, excepted therefrom, the owners of that title, so derived, took the title of the State to the 189.25 acres by transfer under section 3, article 13, of the Constitution, as persons of the second class protected thereby.

That an after acquired title by the State of delinquent lands under one forfeited title will pass under the Constitution to the purchaser at a previous sale of forfeited and delinquent lands, is a proposition supported by *State* v. *Mathews,* 68 W. Va. 89, 96, 69 S. E. 644, 648.

But it is conceded that land purchased and conveyed at such previous sale must in fact cover the after acquired land. It was contended below, and is insisted on here, that owing to the exceptions in the decrees, and in the deed from the commissioner of school lands to Iaeger, under which appellant claims title to the 150,000 acres, the 189.25 acres did not pass to Iaeger. The contention of appellant is that by fair construction of said decrees and deed, and particularly of the decree of confirmation directing the deed, that the 189.25 acre tract was not excepted. This is the real point of controversy, and we do not find it difficult of solution.

First, let us look to the decree authorizing the commissioner to sell the *residue* of the 150,000 acres. That decree was a consent decree. It purports to have been made pursuant to agreement between the commissioner, representing the State, on the one part, and Iaeger and Ulman, claimants, on the other, and is binding on the parties. That decree brought the case on to be heard on the petition, reports, and orders and decrees theretofore entered, and upon the application of Iaeger and Ulman, claimants of the 150,000 acres, for a reduction of the amount of taxes assessed and due thereon on account of junior and other claims inside that tract, which were protected

under the Constitution and laws of the State, and also on account of sales theretofore made by said commissioner out of said larger tract, and on the report of said commissioner, and on his representation in open court that after crediting Iaeger and Ulman with payments of taxes by them and by junior claimants within said tract, and with prior sales made by said commissioner of school lands out of the same, aggregating 7,878 acres, the sum of five thousand dollars was as much as was equitably due and owing for arrearages of taxes on said land, and that the commissioner was willing to accept that sum in satisfaction of all taxes and demands against said tract; and upon the further representation that the said Iaeger and Ulman, who were than prosecuting a suit in the federal court against said commissioner and others, respecting the sale by him of said 7,878 acres, were willing to dismiss that suit and proceeding, and to release and relinquish all claims to all the lands within the 150,000 acres, held legally by junior claimants and others, whose titles and claims were protected under the Constitution and laws of the State, and also to release, surrender and relinquish all claim to the land so sold by said commissioner out of said larger tract, it was thereby and upon consideration of all such reports, orders, decrees and proceedings, and representations so made by the said commissioner and by the said Iaeger and Ulman, and by their consent so made in open court, adjudged and decreed that the said suit of Iaeger and Ulman in the federal district court should be dismissed, on or before the first day of the next term of that court, and that the said Iaeger and Ulman should release and relinquish all claim and title to all lands legally claimed and owned by such junior and other claimants within the 150,000 acre tract, whose titles were then protected under the Constitution and laws of the State, and also all claim to those portions of that tract so sold by the said commissioner, aggregating as aforesaid 7,878 acres; and by like consent it was further adjudged, ordered and decreed that the amount of taxes, &c., that should be paid in redemption of said tract of 150,000 acres, be fixed and determined as of that date, at the sum of five thousand dollars. And it was further adjudged, ordered and decreed that as soon as the said Iaeger and Ulman should dismiss their said

suit in the federal district court and file with the papers of the cause a certified copy of such decree of dismissal, said commissioner was thereby authorized to make sale of all the State's right, title and interest in and to the *residue* of said 150,000 acre tract to said W. G. W. Iaeger, for the sum of five thousand dollars, to be paid as provided, and said commissioner was required to report such sale to the court for confirmation.

At the succeeding October Term, 1886, of said court, and by like consent of said Iaeger and Ulman, and on their motion, said former decree of sale was modified by striking out the following words of that decree, namely, "that the said Iaeger and Ulman release & relinquish all claim and title to all lands legally claimed and owned within the 150,000 acres held by Junior and other claimants whose titles are protected under the Constitution and laws of the State", and by inserting in lieu thereof the words, "that the said Iaeger and Ulman release and relinquish all claim and title to all lands legally claimed and owned within the 150,000 acres held by persons whose titles are protected under the Constitution and laws of this State." It is apparent that the only effect of this modification was to insert in lieu of the words "junior and other claimants" the words "persons". The reason for this modification is not very apparent, except that it may have been to use the word "person", employed in the Constitution and statutes, in place of the words "junior and other claimants". We do not see that the modification changed the effect of the decree, for "junior and other claimants" are necessarily within the class of "persons" protected by the Constitution, if their titles and claims are such and in such condition as to take the benefit of the forfeitures of senior titles.

By the decree of May 18, 1887, pronounced on the incoming of the report of said commissioner, it appeared to the court from said report that said commissioner had made sale of the State's right, title and interest in said 150,000 acre tract on December 20, 1886, to said W. G. W. Iaeger, in the manner prescribed by the decree of July 8, 1886, for the sum of five thousand dollars, as thereby directed, and there being no exceptions to that report the same was confirmed, and on pay-

ment of the purchase money bonds, said commissioner was thereby directed "to deliver to said Iaeger a deed for the said 150,000 acres conveying to him all the right, title and interest of the State therein *subject'* to the rights of all parties whose titles and claims are protected under the Constitutional laws of this State."

The deed by said commissioner to Iaeger, dated December 20, 1886, the date of the sale, but which was not acknowledged for record until March 29, 1888, and recorded March 31, 1888, recites the sale to Iaeger on December 20, 1886, and the report by the commissioner made May 18, 1887, and the decree of confirmation aforesaid of 1887, also the various other proceedings in the cause in which said decrees and proceedings were had, including said decrees of sale and confirmation, and the payment of the purchase money by the purchaser, and in consideration whereof said commissioner thereby granted, bargained, sold and conveyed unto the said Iaeger, party of the second part, his heirs, devisees and assigns, "all the right, title and interest of said State which at any time has passed to and vested in said State under the Constitution and Laws thereof, by reason of any forfeiture or sale whatever, or otherwise, in and to the following described property to wit". Then follows a description of the 150,000 acres by metes and bounds, and by reference to the patent of Robert Pollard, and after this description, and in accordance with the decree of sale, and decree of confirmation, as we construe them, the said deed contains the following saving and excepting clause: "Saving, and excepting, however, from the force and operation of this conveyance the following described land, lying and being within said tract and within the foregoing description thereof First: Two thousand acres, for prior claims specified in and for which an allowance was made by the original Robert Pollard Grant and patent dated as aforesaid March 20th, 1795, second all the lands legally claimed owned and held within said tract by persons whose titles are legally protected under the Constitution and Laws of said State, Third: All of the lands sold as aforesaid by said commissioner, and lying within said tract and which amount to a total of 7,878 acres and which are hereby released and relinquished by said party of the second part and are hereinafter more particularly

set forth, described, numbered and located. The same being numbered from one to thirty-seven both inclusive making in all a total of thirty seven (37) separate and distinct tracts of land and amounting in the aggregate to Seven thousand eight hundred and seventy-eight (7,878) Acres as aforesaid and being the only and all of the said portions of said tract, sold by said Commissioner as aforesaid and which were so sold by him on the 4th day of October and 28th day of November 1881 to wit". Following is a general description by reference to numbers of the various tracts sold out of the larger tract by said commissioner. And then comes the habendum clause.

We think there is no room for controversy, that by the terms of the decree of sale as modified, and by the second class of lands excepted in this deed, the 189.25 acres of land in controversy was clearly excepted and was not intended to be and was not in fact included in that grant. It is insisted, however, on behalf of appellant, that these exceptions in the decrees and deed should be construed as a sale and conveyance of the whole 150,000 acres, and, to use the language of the decree of confirmation, "*subject* to the rights of all parties whose titles and claims are protected under the Constitutional laws of this State." It is argued that appellant has the right to stand on the terms of the decree of confirmation, and that that decree gives title to the whole 150,000 acres, *subject* only to such prior claims, and, as appellant insists qualifying it, holder of the Iaeger title, to take under the Constitution the after acquired title by the State of that portion of the 298.73 acres, the Taylor land, lying within the boundary of the Pollard patent. They rely for this proposition on the rule of *State* v. *Mathews, supra.*

It is contended that the provision in the decree of confirmation, directing a deed, "subject to the rights of all parties whose titles and claims are protected under the Constitutional laws of this State", was merely intended as a "without prejudice" clause, and did not constitute an exception, bringing it clearly within the rule of *State* v. *Jackson,* 56 W. Va. 558. In that case it seems the title of Landsburg to the 50,000 acres was rested upon a decree of redemption alone, not on a decree of sale and confirmation, as in this case. The provision relied on in that decree was: "But this order shall in no wise affect

or impair the rights, titles and claims of any claimant within the boundary of said fifty thousand acres whose titles and claims are protected under the Constitution and laws of this State; but the titles and claims of such claimants shall remain as valid as if this order had not been entered." It is argued that this case, with reference to the decree of sale and confirmation, and the deed, can in no way be distinguished, from the Jackson case. The question in that case was, whether the redemption of the fifty thousand acres, by reason of the "without prejudice" clause in that decree, took the Jackson-Harrison title, a junior title. At the time of that decree of redemption the Jackson-Harrison title was forfeited to the State, and of course was not then protected by the Constitution and laws, and it was decided that as Landsburg, in the redemption of the fifty thousand acres, had paid taxes in arrears for more than five years, he took the then forfeited Jackson-Harrison title. In the case at bar the Taylor title, a junior title, was not forfeited at the time of the purchase by Iaeger of the 150,000 acres. It was then a valid and subsisting title and did not become forfeited until 1902. It was then by the Constitution and laws fully protected, and did not pass to Iaeger. This fact clearly distinguishes this case from *State* v. *Jackson.* We are not called upon here to decide, and do not decide, whether such a so called "without prejudice" clause in a decree of redemption or confirmation is to be distinguished from an exception in a decree of sale and a deed. In this case we have a consent decree of sale, an agreement between the parties, and a deed of the commissioner of school lands made pursuant thereto, expressly excepting from the grant all land within the boundary described held by junior and other claimants whose titles were then protected under the Constitution and laws of the State. The Taylor title was at the time of that decree thus fully protected. And, according to the consent decree of sale, the claimants of the 150,000 acres had credit on account for the taxes chargeable against them. The decree of sale shows they applied for such credit, and the court and the parties by the plain provision of the decree did not intend that the excepted lands should be sold, and they were not sold, or purchased by Iaeger. Iaeger, notwithstanding the special provision of the decree, accepted a

deed from the commissioner of school lands specifically excepting the title of junior claimants. How then can he or those claiming under him contend that the decrees and deed carried to him the Taylor title to the 189.25 acres? In giving construction to the decrees and deed we are not confined to the decree of confirmation. We are permitted to look to the decree of sale and the deed as well. And we are bound to hold that the provision of the decree of confirmation, "subject to the rights of all parties whose titles and claims are protected under the Constitutional laws of this State", was intended as an exception. That decree was based on the report of the commissioner who, as the decree recites, sold the land to Iaeger "in the manner prescribed by the order entered in this cause on the 8th day of July, 1886." That was the decree of sale. That decree authorized the commissioner to sell the *residue* of the 150,000 acres, after excepting the lands of junior claimants so protected. Generally the rule is that a sale by a commissioner, and confirmation of more land or property than is decreed to be sold is invalid. *Chapman* v. *Branch,* 72 W. Va. 54, 78 S. E. 235. Whether this general rule is applicable in proceedings by the State to sell forfeited lands it is unnecessary to decide.

For these reasons we are of opinion that the Iaeger title of the Pocahontas Coal & Coke Company did not cover the Taylor land; that that title was never in a position to take the benefit of the forfeiture of the Taylor title, and that Taylor or the owners of his title had right of redemption. Our conclusion, therefore, is to affirm the decrees appealed from.

*Affirmed.*