T. J. SHIPLEY *v.* L. D. BROWNING *et al.*

(No. 7481)

Submitted November 9, 1933.   Decided December 5, 1933.

410

*Chas. L. Estep,* for appellant.

*C. W. Strickling,* for appellee.

WOODS, JUDGE:

This is a judgment creditor's suit instituted in the circuit court of Cabell county for the purpose of subjecting the real estate owned by L. D. Browning to the payment of the lien debts thereon.

The Buffalo Eagle Mines, Inc., appellant herein, complains of certain rulings of the circuit court in respect to a 5.61 acre tract located in Logan county, which Browning, on April 17, 1922, had leased to its predecessor, Buffalo Eagle Colliery Company, for a term of thirty years, at a rental of $150.00 per month.

The foregoing tract was returned delinquent for the non-payment of taxes for the years 1923 and 1924, respectively. It was sold by the sheriff of Logan county, in January, 1926, for the 1923 taxes, and again, in December, 1926, for the 1924 taxes, being purchased in each instance by the State. The State, by the commissioner of school lands, brought suit in Logan county against Browning and the Buffalo Eagle Colliery Company to sell said tract for the benefit of the school fund, the bill being filed at December Rules, 1929. The school land suit is still pending and no decree of sale has yet been made.

The commissioner in chancery in the instant case found, among other things, that the lien of Shipley's judgment, which was rendered September 13, 1927, and docketed October 4, 1927, attached to Browning's equity of redemption in the 5.61 acre tract. And the chancellor later overruled an exception of Buffalo Eagle Mines, Inc., to that finding. So the first question raised by this appeal is: Does Shipley's judgment attach to such equity of redemption?

Let us briefly consider the statutes governing the sale of real estate for non-payment of taxes and redemption thereof. After purchase on behalf of the state, the sheriff is required, within ten days, to return a certified list of said lands, under oath, to the county clerk, who, in turn, is required to record said list and transmit it to the auditor. Code 1923, Chap.

31, sec. 31. And such sale and purchase vests title in the State. Sec. 32. But, by virtue of section 33, ''the previous owner * * * his heirs or assigns, or any person having a right to charge it for a debt, may within one year from the sale thereof, redeem the same'' by making the payments prescribed therein. Chapter 105, Code 1923, provides for the sale of such lands for the benefit of the school fund. Section 2, thereof, requires the auditor to certify to the commissioner of school lands immediately after the expiration of twelve months from sale (the period fixed by section 33 of chapter 31, aforesaid) · a list of all lands so sold and purchased. Section 6 requires such commissioner to bring a suit in the name of the state to sell such land after making the report required by section 5. It is also provided in section 6 that any person claiming an interest in such land and not made a party defendant, has a right to intervene. Section 17 gives to the former owner, his heirs, devisees or assigns, the specific right to intervene and ask for redemption. And this can be done at any time before final decree in a school land suit. *McGraw* v. *Rohrbaugh*, 74 W. Va. 285, 82 S. E. 217.

It is urged by the appellant by reason of the fact that the land in controversy had been sold to the State for taxes and had not been redeemed from the auditor within one year after such sale, that Browning, the former owner, had no interest therein, either legal or equitable to which the lien of a judgment could attach. To support this contention the following cases are cited. .*Hudson* v. *Land Co.*, 71 W. Va. 415, 76 S. E. 797; *State* v. *King*, 64 W. Va. 546, 63 S. E. 468; *Wiant* v. *Hays*, 38 W. Va. 681, 18 S. E. 807; *State* v. *Board*, 111 W. Va. 562, 163 S. E. 57.

The first two of the last mentioned cases simply follow the statutes discussed and hold that after· a tax sale the former owner has no title. The *Wiant* case, cited as authority for the proposition that a judgment lien does not attach to land forfeited to the state, after the latter's title has become complete, was decided in accordance with the legal situation existing prior to the adoption of our Constitution of 1872. The right of redemption, as contained in section 17, chapter 105, Code 1923, came into being for the first time after the passage by the legislature of chapter 134, Acts 1972-3 which amended chapter 105 of the Code of 1868.

The case of *State* v. *Board, supra,* involved the question of whether or not the state has a right to sell land in a school land proceeding where the title had been· acquired under section 3, article 13 of the Constitution (1872) by another claimant. In that case the state had lost its title because of the fact that such claimant had actual possession of the land, under color of title for five successive years, and had paid all state taxes charged or chargeable thereon for said period. Hence, there is no authority in the foregoing cases for the proposition that the right of redemption of a former owner is not subject to a lien.

Compliance with statutory requirements and receipt of a deed by an individual purchaser terminates the former owner's equity of redemption. However, the situation is different where the sale has been made to the state. The latter wants only her taxes, and the equity of redemption exists as to her until the circuit court in a school land proceeding has confirmed a sale made by a commissioner after having adjudicated the taxes and given the former owner a day to redeem. The very fact that section 33, chapter 31, Code 1923, gives any person having a right to charge such lands for a debt the right to come in and redeem within the year (*Bumgarner* v. *Bank,* 70 W. Va. 787, 74 S. E. 996) adds support to the plaintiff's contention that the sale to the ·state did not strip the former owner of every vestige of interest in the property. The former owner, while divested of legal title by the sale, still owns the equity of redemption, and although after the expiration of one year, and before the bringing of the suit by the school land commissioner, there is a time in which he cannot redeem, his right of redemption is there. We are of opinion that the judgment lien acquired in 1927 attached to Browning's equity of redemption, and affirm the chancellor's finding in that regard.

Before stating the other issues raised on this appeal, it will be necessary to detail a few more of the facts in the case.

It appears that Hinchman, a son-in-law of Browning, was found, on April 12, 1928, to be short in his· accounts to his employer, Buffalo Eagle Colliery Company, in the sum of $9,800.00, which sum the company claimed he had embezzled. On the date aforesaid, Hinchman executed his promissory

note, payable to L. D. Browning and Lake Browning, in the sum of $9,800.00, payable in monthly installments of $150.00, the first installment falling due on May 1, 1928, and a like installment on the first day of each succeeding month until the principal and interest shall have been paid. This note bore the following indorsement: "The within note is endorsed without recourse in case the maker is prosecuted and convicted and confined in the penitentiary of the State of West Virginia in this case. (Signed) L. D. Browning, Lake Browning." At the same time, towit, April 12, 1928, the Brownings aforesaid entered into an agreement in writing with the Buffalo Eagle Colliery Company, which was duly admitted to record in the office of the clerk of the county court of Logan County on April 24, 1928. This writing, after reciting the execution of the note aforesaid, the endorsement thereof by the Brownings, and the delivery thereof to the Colliery Company, was conditioned that the Colliery Company should have the right to retain and collect the rental of $150.00 per month due L. D. Browning under his said thirty-year lease of April 17, 1922, to the Colliery Company, and to apply the same upon the note described above.

Shipley got a second judgment against Browning, February 3, 1928, which was duly docketed. On February 3, 1930, executions were issued on the foregoing judgment and that of September 13, 1927 (hereinbefore referred to), returnable to May Rules (May 5th) 1930. They were placed in the hands of the sheriff on March 3, 1930, and returned "no property found". Under our law (Code 1931, 38-4-8) an execution creates "a lien, from the time it is delivered to the sheriff or other officer to be executed, upon all of the personal property, or the estate or interest therein, *owned by the judgment debtor at the time of such delivery of the writ, or which he may acquire on or before the return day thereof,* although such property was not levied on or capable of being levied on under the provisions of section six of this article." It also appears that the executions were duly docketed, whereby there was constructive notice of the executions to all persons. Code 1931, 38-4-10.

The commissioner in chancery found that the note and assignment of rent to pay the same were void as against public

policy; that from January ........, 1929 (the date that the Buffalo Eagle Mines, Inc., acquired Buffalo Eagle Colliery Company's interests in the 5.61-acre tract), to May 5, 1930, the Buffalo Eagle Mines, Inc., had withheld $2,400.00 ($150.00 per month for 16 months) due Brownings under the thirty-year contract, and that the same was subject to the executions; that the judgment lien of the plaintiff, Shipley, attached to the interest of Browning in said 5.61-acre tract before the Brownings made their purported assignment to the Buffalo Eagle Colliery Company of said unearned rentals; and that the purchaser of the tract will take not only the reversion therein, but the right to all rentals accruing under the Browning lease after his purchase. Exceptions to the foregoing findings were also overruled.

It is quite clear that the consideration in part was an agreement that the prosecution should be suppressed, stifled, or stayed; and was, therefore, void as against public policy. This being so, the Buffalo Eagle Mines, Inc., was necessarily indebted to Browning for the rentals ($2,400.00) accruing between the time it took over the lease and the date on which the executions, hereinbefore mentioned, were returnable.

Appellant contends that the executions, issued after the present suit was matured for hearing, and adjudged by the commissioner to be liens upon the assigned rents (January, 1929, to May 5, 1930) cannot be enforced in such suit; that if the judgment debtor's personal property is not capable of being levied upon under the executions, then the execution lienor's remedy is not under the judgment lien statute, but is under the statutes governing the enforcement of execution liens. Code 1931, 38-4-6; 38-5-10 and 20.

The last cited section (20) expressly authorizes a suit in equity to recover any personal property or any claim on which a writ of fieri facias or an execution is a lien; and that such suit may be maintained in the name of the judgment creditor. It appears that the court in the instant case had jurisdicton of all the parties and of the entire subject matter who or which could in any way be affected by any court decision in relation thereto. It would be an idle thing to say now that a court of equity, with all the parties and subject matter before it, would require the litigant to go to the trouble and

expense of instituting a new suit to accomplish what can be here accomplished. All had the opportunity to test the correctness of the ruling of the Master or the lower court on such questions. See *Mountain State Motor Car Co.* v. *Solof,* 97 W. Va. 196, 201, 124 S. E. 824. It was therefore proper to grant relief in the instant case.

It will be noted that the plaintiff's judgment bore date September 13, 1927, and was docketed on October 4, 1927, while the assignment was not executed until April 12, 1928. The lien of plaintiff's judgment had already attached against the property of Browning. So, as against Shipley, Browning could not by any subsequent act diminish the return that would accrue to him under his thirty-year lease of April 17, 1922. That being so, a sale of the 5.61 acres of land to satisfy the judgment lien of Shipley carries with it the right to the unearned rentals of $150.00 per month accruing after the date of such sale, and the reversion of said lands.

This being so, we affirm the action of the court in so decreeing as to this point of error.

*Affirmed.*