C. B. EARLY, *Receiver, etc. v.* J. A. BERRY *et al.*

*and*

H. H. FERRELL *et al. v.* CLARA H. BERRY *et al.*

(No. 7762)

Submitted April 24, 1934. Decided May 29, 1934.

*Wade H. Bronson* and *E. Gaujot Bias,* for appellants.
*Vinson, Thompson, Meek & Scherr* and *Goodykoontz
& Slaven,* for appellees.

KENNA, JUDGE:

This appeal is prosecuted to a decree of the circuit court of Mingo County rendered on the first day of July, 1933, refusing to set aside a judicial sale made in the consolidated causes of C. B. Early, receiver, v. J. A. Berry and others, and H. G. Ferrell and others against Clara H. Berry and others pending in that court. Randolph Bias and Harry G. Williams were the purchasers at the sale of the lot of land described as tract No. 5. The death of Harry G. Williams having occurred while the suit was pending, on suggestion of that fact the cause was revived in the name of Myrtle S. Williams, in her own right and as administratrix of the estate of Harry G. Williams and of Octavia Williams Brogan as sole heir at law and distributee of Harry G. Williams. There is little controversy concerning the facts and the main legal point for decision arises in the following manner:

On July 20, 1925, the Bank of Gilbert obtained a judgment against J. A. Berry for $3,595.00. The lien of this judgment was duly perfected against a three-fourths undivided interest in the mineral excepting the oil and gas under a tract of 502.97 acres on Guyan River at that

time owned by and assessed to Berry. Execution was issued and returned no property. Subsequently, the Bank of Gilbert obtained other judgments against Berry and still later, C. B. Early was appointed receiver for the bank. In September, 1926, the receiver brought a creditors' suit based upon the judgments of the bank against the lands of Berry, including the mineral interest above mentioned.

On January 31, 1927, the mineral interest in question was sold to the State of West Virginia for the taxes delinquent thereon for the year 1924.

At March Rules, 1927, an amended bill was filed alleging the death of Berry and making the changes as to parties necessitated by that fact. An order of reference was had with the usual direction in a judgment lien creditors' suit, and the report came in December 15, 1927, on which day a decree of sale was entered after the necessary adjudication of liens. The lands ordered sold were directed to be sold subject to the lien of any unpaid taxes thereon. The sale took place April 25, 1928, and Bias and Williams bought the tract in question for $3,200.00, paying one-third in cash and executing their notes in six, twelve and eighteen months for the balance. The land had been advertised to be sold subject to the lien of taxes and it was so cried and knocked down. The sales were reported and confirmed without objection on April 26, 1928, and the special commissioners were directed to make deeds and collect the deferred purchase money, the deeds to be subject to unpaid taxes upon the land sold.

The mineral interest herein involved not having been redeemed from the sale for the taxes of 1924, which took place January 31, 1927, on May 25, 1929, the school commissioner proceeded against the land.

On October 7, 1930, the purchasers not having complied with their bid as to the deferred purchase money, a rule was issued against them to show cause why the land should not be re-sold at their risk unless the purchase money was paid in full. In answer to this rule, the return of the purchasers takes the position that since the title vested in the state by the sale of January 31, 1927, had

become irredeemable and forfeited before the date of their purchase on April 25, 1928, there was absolutely no title before the court in the creditors' suit which could be sold, that the rule of *caveat emptor* does not apply because the failure of consideration is total and that the sale by the special commissioners under the circumstances operated as a legal fraud upon them, from the effects of which they should be relieved, their purchase cancelled and the cash payment made refunded to them. To this contention, the special commissioners reply that the land was cried and sold subject to the lien of the unpaid taxes, the purchasers had available to them every source of information to ascertain the amount and status of the taxes for each year, that the equity of redemption of Berry, the former owner, at all events, was before the court, that it passed at the judicial sale and is a substantial, equitable property right entitling the purchaser to the land upon payment of the taxes subject to which it was sold to them and that in equity and good conscience they have received just exactly what they were entitled to and have no just cause for complaint. The commissioners further take the position that since the sale was confirmed without objection and the decree of confirmation was not appealed from, and since, also, the purchasers at the judicial sale raise no question as to its fairness and validity from its date, April 25, 1928, until after the rule to show cause was issued, October 7, 1930, laches now bar the purchasers from being relieved of their purchase because, in the meantime, circumstances have so materially altered with respect to value of the property, that it would not now bring sufficient to pay the cost of the proceeding.

There are many perplexities involved in the question presented for decision, and the able presentation and exhaustive briefing of the case by counsel on both sides have been of great assistance. There is no question but that the circuit court of Mingo County, upon the bringing of the creditors' suit, acquired full and complete jurisdiction of the property in question. The sole question seems to be whether the circuit court, upon the sale

and forfeiture *pendente lite* the creditors' suit, lost the jurisdiction it had acquired.

Prior to the enactment of the act of March 25, 1882, the right of a former owner to land forfeited to the state was confined to the excess over and above the taxes, interest and costs that might be realized at the school commissioner's sale. The proceeding for sale was held not to be a judicial proceeding and the former owner was not a necessary party thereto. *McClure* v. *Maitland,* 24 W. Va. 561. (This case contains a full historical discussion of our forfeiture laws with many useful references.) After that act took effect, however, the proceeding was judicial and the former owner was a necessary party thereto. *Hayes, Commissioner* v. *Camden Heirs,* 38 W. Va. 109, 18 S. E. 461. The act of March 25, 1882, has come down to us through various legislative ramifications, the history of which it is thought not necessary here to trace out. Since the proceeding by the state to sell forfeited land owned by it, the nature of the rights to be litigated therein, the parties thereto, and the nature of what may be litigated therein can be looked to to shed some light upon the respective rights of the state and of the former owner, and upon the nature of those rights, it is well to draw attention to section 6 of chapter 105 of the Code of 1923, which is the statute in question. It provides for a suit in chancery to be brought in the name of the state by the commissioner of school lands. It requires that the former owner, or the person in whose name the land proceeded against was forfeited, shall, if known, be made defendant to the suit, as shall all persons *claiming title to or interest in any such land, be made defendants therein,* and that if they are not so made defendants, they may file their petition in such suit stating what their interest or claim *in the land* may be, etc. This section expressly provides that the right to redeem, and the rights claimed under distinct and hostile titles, may be litigated in this sort of proceeding, and this court has held that conflicting titles to land may be adjudicated therein. *State* v. *Harman,* 57 W. Va. 447, 50 S. E. 828. Section 17 of chapter 105 confers upon the former own-

er the absolute right of redemption at any time before confirmation of sale. Section 16 of chapter 105 confers upon the former owner the right to claim the excess over and above the taxes, interest and costs that may be realized upon the sale and confers the same right upon *any creditor having a lien on said land at the time of said forfeiture, and still existing.*

It is quite true that this court has held in several different cases that the sale to the state, and the subsequent forfeiture, vests title to the land altogether and absolutely in the state. This is always subject, however, under our modern statutes, to the right of the former owner to redeem up to the time of confirmation of sale in a school commissioner's proceeding. It has also been held that a former owner can maintain no suit and has no litigable interest in land forfeited to the state. *Morgan* v. *Pool,* 76 W. Va. 534, 85 S. E. 724; *Haner* v. *MacCorkle,* 109 W. Va. 762, 158 S. E. 500; *State* v. *Mathews,* 68 W. Va. 89, 69 S. E. 644. It must be observed, however, that this rule is subject to a qualification in favor of the litigable interest expressly conferred upon the former owner by statute which he may exercise in the proceeding by the school commissioner to sell forfeited land. This seems to be the one place where the courts are open to the former owner to litigate his title in spite of the forfeiture. A distinction seems to exist also between the right of the former owner, who has permitted his title to become forfeited, to assert that title himself, and the right of his creditors to subject whatever interest he may have to their just claims.

It is urged here that after forfeiture, there was nothing before the circuit court of Mingo County in the creditors' suit. We are of opinion that whatever rights the former owner had in the land remained before the circuit court in the creditors' suit. As has been pointed out, these rights embrace the absolute right to redeem the land at any time before confirmation of a sale in a school commissioner's proceeding, and the right to litigate his title to the land in that proceeding. The trustee and *cestui que trust* under a deed of trust on the land are necessary

parties to a school commissioner's suit to sell. *State* v. *Felty,* 109 W. Va. 384, 390, 155 S. E. 122. Such a proceeding may be consolidated with a creditors' suit involving the same land. *Coal Co.* v. *Bank,* 110 W. Va. 46, 156 S. E. 838. The right to redeem is a substantial equity, and a property right that exists as long as legal title remains in the state. *Neal* v. *Wilson,* 79 W. Va. 482, 487, 92 S. E. 136. The title of the redemptioner is retrospective in character and vests him with the right to sue for trespass occurring during the time of forfeiture. *Mining Co.* v. *Gerstell,* 95 W. Va. 471, 121 S. E. 569, 33 A. L. R. 298. It is subject to the lien of a judgment. *Shipley* v. *Browning,.* 114 W. Va. 409, 172 S. E. 149, 91 A. L. R. 643. Being subject to the lien of a judgment, this right of redemption to mean anything, must be such a right as could be proceeded against in a judgment lien creditors' suit. Otherwise, land forfeited to the state would, after the lapse of one year, be fully protected against creditors (who have no right to redeem it) and would be subject to the whim of the former owner as to when he would see fit to exercise his right to redeem and when he would not. It is said that all persons having an interest in land proceeded against in a suit of this nature should be parties to the proceeding before the court can have complete jurisdiction to dispose of the land. This is undoubtedly well settled law as to private litigants. But who is going to make the state a party defendant in a creditors' suit in the face of the constitutional inhibition? Constitution, Article VI, section 35. We cannot perceive how we can apply to the state the rule as to private litigants, when it is not possible to make the state a party defendant. The reason for the rule against making the state a party litigant to proceedings of a private nature at the will of individual plaintiffs needs no comment.

The court is of opinion that it is comparatively clear that the sale and forfeiture of the title to the mineral interest in question did not result in a complete ouster of jurisdiction of the circuit court of Mingo County as to that interest, but, to the contrary, that the right of redemption of the former owner, with all of the rights and privileges that attach thereto, remained before the court

for final disposition, and could only have been lost to the suit by the creditors after confirmation of a sale had in a school commissioner's proceeding.

But do the circumstances of this sale in the creditors' suit amount to legal fraud that would excuse the purchasers at that sale from their bargain? The court is of opinion that they do not. The land was advertised for sale and was cried and sold subject to the *lien* of taxes.

The status of the taxes was not set forth in the commissioner's report in the proceeding, and no representation concerning it was made at the time of the sale nor in the advertisement. It is pointed out that the proceedings were subject only to the *lien*. In an extremely restricted sense, this, of course, would imply that no actual forfeiture, or transfer of the title to the state, had taken place. However, we think this interpretation of that circumstance is too narrow. In common and usual acceptation, advertising the land to be sold subject to the lien of taxes would mean subject to taxes, whatever their status. It would be a clear invitation to the prospective purchasers to inquire as to status of taxes at their peril. This fact, coupled with the fact that the public records, of which the purchasers would be required to take notice, contain full information of the status of this interest as affected by taxes, we think is sufficient to repel any imputation of even legal fraud.

Another question exists on the point that whereas the entire mineral interest was advertised, the interest proceeded against was the mineral, less the oil and gas. The court is of opinion that from the record of the creditors' suit, full and complete information concerning the interest to be sold was available to the purchasers at the judicial sale, and, hence, that this point is covered under the rule of *caveat emptor* after confirmation of the sale. *Fleming* v. *Holt*, 12 W. Va. 143; *Headley* v. *Hoopengarner*, 60 W. Va. 626, 55 S. E. 744; *Young* v. *Smith*, 88 W. Va. 445, 107 S. E. 110.

We have not dealt with the question of laches which is forcefully raised in the brief of appellee. We do not deem it advisable, in the light of the disposition made of the

other questions raised, to permit the case to be decided on this point. However, it is a matter that would have to be taken into very serious consideration had the questions concerning the merits been otherwise decided. There was no objection to the confirmation of the sale in the creditors' suit. A lapse of more than two years was permitted to take place during which all of the deferred purchase money became due, and a rule was issued against the purchasers to comply with their bid, before any question as to the validity of the sale was raised. In the meantime, and beyond dispute, the land had become greatly reduced in value, so that the interests of those holding liens upon it would have been very prejudicially affected in the event that the purchase had been cancelled. It would seem that proper diligence would require more promptness.

For the reasons set forth, we are of the opinion that the decree of the circuit court of Mingo County declining to relieve the purchasers of their bid must be affirmed, and the cause remanded for further proceedings in the event that the bid is not complied with within a reasonable time, to be fixed by the circuit court, from the date upon which the mandate hereunder is received by the circuit court of Mingo County.

*Affirmed.*