STATE OF WEST VIRGINIA

*v.*

L. C. BLEVINS, *et al.*

(CC 733)

Submitted January 14, 1948.   Decided March 23, 1948.

352

*Ira J. Partlow,* Attorney General, *John C. Vance,* Assistant Attorney General, and *Samuel A. Christie,* for plaintiff.

*Koontz & Koontz,* and *Kenneth E. Hines,* for defendants.

LOVINS, JUDGE:

The State of West Virginia instituted this suit in the Circuit Court of McDowell County against L. C. Blevins and twenty-eight other named defendants and all unknown persons who have or claim an interest in twenty-five lots or tracts of land situate in said county. The purpose of this suit is to sell said lands for the benefit of the school fund. W. S. W. Ray and D. C. Cartwright, two of the named defendants, demurred to the bill of complaint. The demurrer having been overruled, the trial court, on the joint motion of the State and the defendants, certified the questions arising thereon to this Court for its decision.

Eleven of the grounds of demurrer rest on the alleged unconstitutionality of certain sections of Code, 11A-4, as last amended. Said statute will be hereinafter referred to by section or the word "statute" without other designation.

The following facts are alleged in the bill of complaint: Edgar B. Sims is the duly elected and qualified auditor of the State of West Virginia and ex officio commissioner of forfeited and delinquent lands of said State. Samuel A. Christie is the lawfully appointed and qualified deputy commissioner of forfeited and delinquent lands for Mc-Dowell County, West Virginia. Said auditor on April 5, 1946, certified to the Circuit Court of McDowell County a list of all lands in said county which were forfeited, delinquent, escheated, or waste and unappropriated. A copy of said certificate was forwarded to, and received by the deputy commissioner of forfeited and delinquent lands of said county, who, within ten days of the receipt of said certificate caused a notice to redeem to be published and posted.

A copy of the certified list is exhibited with, and made a part of, the bill of complaint. It is disclosed by said list that twenty of the said tracts or lots of land were sold to the State as delinquent for the nonpayment of taxes levied and assessed prior to the year 1936; that four tracts of land so certified were sold to the State as delinquent for the nonpayment of taxes levied and assessed after the year 1935; and that one tract was forfeited, apparently, for nonentry on the land books for the years 1930 to 1945. It is further alleged in the bill of complaint that no taxes have been extended or paid on the twenty tracts or lots of land above mentioned, or on the one tract forfeited for nonentry, or on two other lots or tracts which are shown by the certificate to have been sold as delinquent for nonpayment of taxes levied and assessed on the said lands for the years 1937 and 1940. No allegation is made in the bill of complaint relative to the extension and payment of taxes on the other two lots or tracts covered by the certificate.

It is further alleged in the bill of complaint that all of the said tracts or lots of land have become irredeemable; that "the title thereto remains in the State"; that said lands are subject to sale for the benefit of the school fund; and that unknown parties may have or claim an interest in the lands sought to be sold.

The bill of complaint prays that all persons named in the caption, being persons in whose names the lands were returned delinquent or forfeited, be made defendants; that process issue as to them; that an order of publication be awarded as to all unknown parties or claimants who have or claim an interest in the lands proceeded against; that the right, title and interest of such unknown persons who fail to appear and defend their rights be foreclosed and held for naught; that a suitable guardian *ad litem* be appointed for any known or unknown infants and "for all unknown persons, firms and corporations"; that the rights of the defendants, respectively, in and to any tract or lot of land proceeded against be adjudicated; that the title to all of said tracts or lots of land proceeded against be adjudged as vested in the State of West Virginia and subject to sale for the benefit of the school fund; that a decree of reference be made, as required by Section 20 of the statute; that the court may permit dismissal of the suit as to any tract or lot of land, under the provisions of Section 19 of the statute; that a decree of sale be made for the benefit of the school fund; and for general relief.

The bill of complaint, by endorsement thereon, discloses that process was returned at August rules, 1947, executed as to eight of the named defendants; that an order of publication was awarded as to said eight defendants, as well as to all other defendants; and that a guardian *ad litem* was appointed for known and unknown infant defendants. By a second endorsement on said bill of complaint, it is shown that at September rules, 1947, the cause was set for hearing as to all eight known defendants served with process; that an order of publication was completed; and that the cause was set for hearing as to all defendants.

A copy of the order of publication is filed with the bill, which shows that it was awarded on July 21, 1947, being styled "State of West Virginia, plaintiff v. L. C. Blevins, et al., defendants". The object of the suit, as stated in said order of publication, is to obtain a decree of the Circuit Court of McDowell County for the sale of all lands

described in the certificate. Certification No. 5, set forth in the order of publication, is typical of the other twenty-four certifications likewise shown in the order of publication. Certification No. 5, reads as follows: "Certification No. 5: Year Sold: 1925. Name in which sold: L. C. Blevins and W. S. W. Ray. Location and description: Lot 3, Little Creek, Adkin District, McDowell County, W. Va. Name of former owner: L. C. Blevins and W. S. W. Ray."

All of the named defendants are required by said order of publication to appear within one month after the 23rd day of July, 1947, that being the date of the first publication, and "do what is necessary to protect their interest". A similar command is given to all unknown parties who are or may be interested in any of the lands included in the suit. It does not appear from the record whether the order of publication was awarded without the making and filing of an affidavit therefor, although, by Section 12 of the statute, it is provided that the order of publication in suits of this kind shall be issued by the clerk of the circuit court "without the filing of any affidavit by the deputy commissioner as required in other cases."

The questions raised by the demurrer are grounded entirely on the statute, the title of which reads as follows: "AN ACT to amend and reenact section eight, article three, and all of article four, chapter *eleven-a* of the code of West Virginia, one thousand nine hundred thirty-one, as amended, relating to the collection and enforcement of property taxes, including the redemption of forfeited and delinquent lands and the sale of forfeited, delinquent, escheated and waste and unappropriated lands for the benefit of the school fund." (Italics ours). It will be noted that the above quoted title refers to Chapter 11A of the Code of 1931. An examination of the official Code of 1931, discloses that no chapter therein contained is designated as 11A. But Chapter 117, Acts of the Legislature, 1941, added a new chapter to the Code of 1931 to be numbered "11-A". The provisions of Chapter 117, *idem,* eliminate the apparent inaccuracy in the title of the statute here considered, and we consider that the title sufficiently

identifies the applicable statutes amended and reenacted thereby.

Before stating and discussing the questions certified, some general principles applicable to the decision of eleven of the certified questions are to be discussed. As will hereinafter be shown, the constitutionality of certain sections of the statute is challenged. In deciding the questions, we must bear in mind well-established principles with reference to a judicial determination of the constitutionality of a statute.

The Legislature is the supreme law-making power in this State, and it may enact any statute not prohibited by the State or Federal Constitution. Many authorities could be cited for the proposition just stated, however we think two will suffice: *Arslain* v. *Alderson,* 126 W. Va. 880, 30 S. E. 2d 533, and *Road Commission* v. *County Court,* 112 W. Va. 98, 163 S. E. 815. It is unnecessary for the Constitution to give the Legislature express authority to enact a statute. *State ex rel. Thompson* v. *McAllister,* 38 W. Va. 485, 18 S. E. 770. There is a presumption in favor of the constitutionality of a statute, and, unless clearly and plainly violative of some provision of the Constitution, the statute will be upheld. *Booten* v. *Pinson,* 77 W. Va. 412, 89 S. E. 985. For an excellent discussion of circumstances in which a statute may be declared unconstitutional, see Chapter VII, 1 Cooley's Constitutional Limitations, 8th Ed.

The history of the statutes and constitutional provisions enacted and adopted by Virginia and this State as related to the grant of land titles, the forfeiture thereof for nonentry, sale for delinquent taxes, transfer by virtue of Section 3, Article XIII of the Constitution of this State, and the method of disposing of delinquent, forfeited, escheated, waste and unappropriated lands is interesting and has been discussed at length in the opinions of this Court in *McClure* v. *Maitland,* 24 W. Va. 561, and *Sims* v. *Fisher,* 125 W. Va. 512, 25 S. E. 2d 216.

It has recently been held by this Court that a proceeding to sell land for the benefit of the school fund must be

a judicial proceeding, founded on process or notice before hearing, and requires a judicial finding that the land proceeded against is subject to sale. *Sims* v. *Fisher, supra.* In *State* v. *Farmers Coal Co.,* 130 W. Va. 1, 43 S. E. 2d 625, this Court held that lands sold to the State by the sheriff must be irredeemable before the State may institute suit, "as provided in Section 4 of Article XIII of the Constitution of this State." It is to be noted that the decision in the case of *State* v. *Farmers Coal Co., supra,* relates only to lands sold to the State for nonpayment of taxes.

In Article XIII of the Constitution of this State, lands are classified: (1) as lands sold to the State for nonpayment of taxes and become irredeemable; (2) as lands forfeited for nonentry on the land books for five successive years and become irredeemable; (3) as escheated lands; (4) as waste lands; and (5) as unappropriated lands. By Section 2, Article XIII of the Constitution, no entry on land may be made by warrant. Title to all of the land so classified and owned by the State, except lands transferred by Section 3, Article XIII, "* * * shall remain in this State till such sale as is hereinafter mentioned be made, [and] shall by proceedings in the circuit court of the county in which the lands, or a part thereof, are situated, be sold to the highest bidder." Section 4, Article XIII, Constitution of West Virginia.

We are only concerned with forfeited and delinquent lands in the instant case. Furthermore, Section 10, provides that "in a suit for the sale of any escheated lands or of any waste and unappropriated lands, no lands of any other sort shall be included."

It is to be noted that Article XIII of the Constitution of this State grew out of the policy of this State and of Virginia to encourage the occupancy of lands and the entering of such occupied lands on the land books for taxation.

The questions certified by the trial court are copies *in haec verba* of the grounds stated by defendants in support of their demurrer, and do not constitute proper questions.

The grounds of demurrer are argumentative and lack conciseness. Furthermore, the form in which the questions are certified practically disposes of all questions of law arising in this case. But because of the history of former statutes providing procedure for the sale of lands under Article XIII of the Constitution and the public interest involved, we shall discuss all of the questions certified, which are substantially as follows:

(1) Is the certificate of the auditor, as authorized by the statute, sufficient to sustain a decree for the sale of the lands mentioned therein without other proof?

(2) If such certification by the auditor, pursuant to the statute, is the only evidence in support of a decree of sale, does the statute confer a judicial function upon the auditor, or an administrative function upon the court, in violation of Article V of the Constitution?

(3) Is the statute contrary to the Fourteenth Amendment of the Constitution of the United States and to Section 10, Article III of the Constitution of West Virginia in failing to require that the suit be against known persons holding liens, persons in possession of the land and persons claiming an interest in the same, as disclosed by the records of the county?

(4) Does it constitute due process of law, under the Federal and State Constitutions, to proceed against and sell land, where persons holding record liens, persons in possession and persons claiming an interest in the land are proceeded against as unknown parties, and may a circuit court, in the absence of process and due diligence to ascertain the existence of such persons, make a finding that the State is vested with absolute title to the lands proceeded against, within the meaning of Article XIII, Section 4 of the Constitution of West Virginia?

(5) Does Section 12, authorizing an order of publication, without affidavit in support thereof, against persons resident in the State who have or claim an interest or lien of record against the lands proceeded against, and who, by the exercise of diligence, could have been located

within the State and served with process or given actual notice, violate Section 10, Article III, of the Constitution of West Virginia and the Fourteenth Amendment to the Constitution of the United States?

(6) Considering the provisions of Section 39, which releases all taxes, interest and charges that may be due on any real estate in this State for the assessment year 1935, and for all years prior thereto, is it violative of Section 4, Article XIII of the State Constitution to proceed against lands for the nonpayment of taxes levied and assessed prior to the year 1936?

(7) Is it contrary to the Fourteenth Amendment to the Constitution of the United States and Sections 1 and 10, Article III of the Constitution of West Virginia to deprive the former owner, his heirs, assigns, and agents of the right to purchase at a sale made by the deputy commissioner of forfeited and delinquent lands, decreed by the circuit court in a suit of this character?

(8) Is the provision contained in Section 27, relative to sales being avoided at the instance of a person having the right to redeem violative of the constitutional right of transfer which may have been acquired by such purchaser under Section 3, Article XIII of the Constitution of West Virginia?

(9) Considering the constitutional right of redemption of forfeited lands conferred by Section 6, Article XIII of the Constitution on infants, insane persons and married women, may the State, prior to the expiration of the time provided for such redemption by the Constitution, sell lands of persons under such disability?

(10) Is Section 34 constitutional in view of the provisions of Sections 3 and 4 of Article XIII of the Constitution of West Virginia?

(11) Does the sale of lands owned by infants, insane persons and married women for nonentry, destroy the right of redemption given such persons in Section 6 of Article XIII of the Constitution?

360

(12) Is it inequitable to require the successful applicant to pay the costs in accordance with the provisions of Section 20?

Defendants have assumed that the statute requires a decree of sale of the lands proceeded against upon the certificate of the auditor. Section 9 requires the auditor to certify to the circuit court of each county a list of all lands in said county subject to sale. The statute does not direct the circuit court, to which such certificate is made, to act upon the auditor's certificate alone. Upon application to dismiss the land from a pending suit by a person substantially interested, the court is required by Section 20 to make a decree of reference as to the land involved, unless the court is of opinion that such decree of reference is unnecessary. We do not think that Section 20 in any wise restricts or interferes with the discretion of a court of equity to make full inquiry and require sufficient proof to support any finding to be made by it. Procedure in a suit to sell land, such as here considered, is entirely statutory and it may be argued that the requirement of a decree of reference in one instance may preclude such action on the part of the court in instances not within the express purview of the statute. Since the statute provides that a court of equity shall take jurisdiction of the proceeding, the court, under general equity principles and by necessary implication, has full and complete jurisdiction to require proof and make such decree as may be authorized by law and supported by proof. Thus, the court, being vested with such authority may make a decree of reference for the purpose of ascertaining whether the lands certified by the auditor are, in fact, subject to sale under the provisions of Section 4 of Article XIII of the Constitution of this State.

The statute does not in any way confer judicial authority on the auditor, nor an administrative function on the court. The statute vests in the court sufficient jurisdiction to conduct the suit in accordance with well-recognized and general principles of equity, requiring proof to establish any fact. In carrying out the purpose of the Legislature to quiet title, a circuit court should

ascertain every fact relating to any one or more of the tracts or lots of land certified, necessary to enable it to act and decree in accordance with the constitutional provisions and to attain the object and purposes as declared by the Legislature.

Questions Nos. 3, 4 and 5 will be considered together, since they involve the same question in different aspects.

Section 10, Article III of the State Constitution provides that: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." The Fourteenth Amendment to the Constitution of the United States, so far as applicable to the questions here considered, reads as follows: "* * * nor shall any State deprive any person of life, liberty, or property, without due process of law * * *." The general objectives of these constitutonal provisions are the same. Thus the question arises: What is due process of law?

We have found no sufficient and all-embracing definition of that phrase. Due process of law requires that a court assuming to determine the rights of parties shall have jurisdiction; that such parties shall have notice; and that they be given a reasonable opportunity to be heard before any adjudication is made. We do not mean to say that the foregoing is a complete definition of that principle referred to in all the decisions as "due process of law." But for the present purpose it is sufficient.

This is not a suit between private parties, but is a suit in equity so designated by the statute. It is authorized by the provisions of Section 4, Article XIII of the Constitution of this State, and has for its purpose the sale of lands belonging to the State, forfeited for nonentry, or sold to the State as being delinquent for the nonpayment of taxes. Section 4, Article XIII directs that the five classes of land hereinabove mentioned, owned by the State and irredeeemable, shall be sold in a proceeding in the circuit court of the county where the land is situate. The right of entry by warrant being prohibited by Section 2, Article XIII of the Constitution, the State has no way to dispose

of land of the classes mentioned in Section 4, Article XIII, other than by a proceeding in the circuit court. It is to be observed that the proceedings are not defined in the Constitution, nor does any provision of Article XIII characterize the proceedings as being in law, in equity, *in personam, in rem, inter partes,* or *ex parte.*

The statutes heretofore enacted pursuant to the State Constitution made such proceedings a suit *in personam* and *inter partes.* But we think that under the statute here considered the suit is a proceeding *inter partes,* and substantially one *in rem.* See 3 Freeman on Judgments, 5th Ed., Sections 1517 and 1524.

Proceedings to sell land for the collection of taxes rest on grounds different from those on which proceedings between private parties rest. In discussing remedies for the collection of taxes, an eminent author said: "Very summary remedies have been allowed, in every age and country, for the collection by the government of its revenue. * * * The protective principles of the common law are not supposed to be violated by a resort to summary proceedings in these cases. [But] Summary processes are not necessarily unjust. * * * There is a tacit condition annexed to the ownership of property that it shall contribute to the public revenue in such mode and proportion as the legislative will shall direct. * * *." 3 Cooley, Taxation, 4th Ed., Section 1326. In Section 1405 of the same work the author stated: "Proceedings of this nature are not usually proceedings against parties, nor, in the case of lands or interests in lands belonging to persons unknown, can they be. They are proceedings which have regard to the land itself rather than to the owners of the land, and if the owners are named in the proceedings and personal notice is provided for, it is rather from tenderness to their interests, and in order to make sure that the opportunity for a hearing is not lost to them, than from any necessity that the case shall assume that form. * * *."

Judge Williams in the case of *State* v. *Mathews,* 68 W. Va. 89, 97, 69 S. E. 644, in speaking of former owners' rights of redemption said: "* * * it follows that the for-

mer owner's right to be made a party to the state's petition is subject entirely to the will of the Legislature. It could at any time revoke the right, or privilege, to be made a party; or it could cure any defect in the proceeding resulting from a failure to make the former owner a party." This Court has not passed on the precise questions of law involved in questions 3, 4 and 5.

But in other jurisdictions the principles involved in those questions have been elaborately discussed. "Where a state seeks directly or by authorization to others to sell land for taxes upon proceedings to enforce a lien for the payment thereof, it may proceed directly against the land within the jurisdiction of the court, and a notice which permits all interested, who are 'so minded', to ascertain that it is to be subjected to sale to answer for taxes, and to appear and be heard, whether to be found within the jurisdiction or not, is due process of law within the 14th Amendment to the Constitution." *Leigh* v. *Green*, 193 U. S. 79, 24 S. Ct. 390, 48 L. ed. 623. In accordance therewith, the Court held that the rights of a lienholder were not violated by a sale on an order of publication.

Notice by publication that proceedings to sell lands, the title to which is vested in the State by virtue of a sale by the sheriff and the expiration of the time for redemption, meets the requirement of due process of law under the Fourteenth Amendment to the Federal Constitution. *Longyear* v. *Toolan*, 209 U. S. 414, 28 S. Ct. 506, 52 L. ed. 836.

The Constitution of this State and the statutes then in force, relative to lands forfeited for nonentry on the land books, are discussed, analyzed, and approved as constituting due process in the case of *King* v. *Mullins*, 171 U. S. 404, 18 S. Ct. 925, 43 L. ed. 214. Therein it was said: "The system established by the Constitution and laws of West Virginia (Const. Art. 13; Code, c. 105), under which taxable lands are forfeited to the State for neglect by the owner for five consecutive years to enter them upon the proper land books for taxation, and under which such lands, upon petition required to be filed in the proper court by the State's representative, are sold, after actual or con-

structive service upon the owner, and with liberty to him to intervene and redeem, is not inconsistent with the due process of law guaranteed by the federal constitution."

Numerous cases in other jurisdictions hold that proceedings to collect taxes are sui generis with respect to the notice necessary to constitute due process of law, and thus recognize a distinction between ordinary suits and actions and a proceeding to sell lands to enforce collection of taxes. See *Winona & St. Peter Land Co.* v. *Minnesota,* 159 U. S. 526, 16 S. Ct. 83, 40 L. ed. 247; *Spitcaufsky* v. *Hatten* (Mo.), 182 S. W. 2d 86; *Ball* v. *Ridge Copper Co.* (Mich.), 76 N. W. 130; *Merchants' Trust Co.* v. *Wright* (Cal.), 118 P. 517; *Woodrough* v. *Douglas County* (Neb.), 98 N. W. 1092; *Williams* v. *Pittock* (Wash.), 77 P. 385; *Orange County* v. *Jenkins* (N. C.), 156 S. E. 774; *Napier* v. *City of Springfield* (Mass.), 23 N. E. 2d 157; *City of Coral Gables* v. *Certain Lands, etc.* (Fla.), 149 So. 36; *City of Buffalo* v. *Hawks,* 236 N. Y. S. 89; *City of Utica* v. *Proite,* 36 N. Y. S. 2d 79.

We note that the statute does not expressly provide that the person in possession of the land must be made a party to the suit to sell it. And we have considered the case of *Harris* v. *Barnes* (Neb.), 291 N. W. 721, which holds: "A decree of foreclosure of a tax lien upon unknown owners of land, rendered upon service by publication against unknown owners and the land itself, is of no effect as against the persons who were at the time in actual possession of and farming the land, and who were not made parties defendant in the action and had no notice or knowledge thereof." Likewise we have considered the case of *Killian* v. *Hubbard* (S. D.), 9 N. W. 2d 700, which was a suit to quiet title. The *Harris* case and *Killian* case are not authority under the constitutional provisions of this State for the proposition that a person in possession of land must, of necessity, be made a party to a suit to sell lands, the title to which is vested in the State.

If a person is in possession of the land and has an interest therein, he is charged with knowledge that said lands are subject to taxation and that the taxes must be

paid or the lands will be sold for failure to pay the same. Moreover, such person, if he claims to be the owner, is charged with knowledge of the requirements of Section 6, Article XIII of the Constitution of this State, which makes it the duty of owners of land to enter the same for taxation. It necessarily follows that he also knows that if lands are entered for taxation and such taxes are unpaid, the land will eventually be sold. Any person competent to own property should know that taxes on land must be paid to produce revenue for the maintenance of orderly government and for the protection of the owner's title.

It may be argued that when a person in possession has paid all taxes due on the land and that another tax charge is a double charge or that the charge is improper because taxes are assessed in the name of a person not the owner. An answer to that argument will be found in the fact that the order of publication required to be issued by Section 12 gives the names of the former owners and the local description of the lands. We think that requirement is sufficient to give notice to the person in possession that the land he occupies is liable to sale. Furthermore, if the assessment is improperly made, and no title has been acquired by the State, the real owner, who had properly paid the taxes thereon, would not be deprived of his title. *Preston* v. *Bennett,* 67 W. Va. 392, 68 S. E. 45.

Our attention has been directed to the cases of *Bank* v. *Becker,* 119 W. Va. 534, 194 S. E. 849; *State* v. *Musgrave,* 109 W. Va. 247, 153 S. E. 515; *State* v. *Felty,* 109 W. Va. 384, 155 S. E. 122; *Asbury* v. *Adkins,* 107 W. Va. 628, 149 S. E. 831; *Ellis* v. *Hager,* 87 W. Va. 313, 104 S. E. 607; *Neal* v. *Wilson,* 79 W. Va. 482, 92 S. E. 136; and *Preston* v. *Bennett, supra.* An examination of those cases discloses that the court, in deciding them, considered and applied the provisions of the statute then in force relative to the sale of delinquent, forfeited, escheated, waste and unappropriated lands.

This suit presents an entirely different question. The Legislature has enacted a different statute on the theory that the title to the land is vested in the State and makes

a proceeding to sell such lands one substantially *in rem*, as hereinabove stated. It provides that the owners of the lands sought to be sold, in whose names the lands were sold by the sheriff or forfeited, shall be named parties to the suit. We note the expression of this Court in the case of *State* v. *King*, 64 W. Va. 546, 561, 63 S. E. 468, wherein it was said that a suit similar to this was not a proceeding *in rem*, but we do not think that under the present statute that particular holding applies.

Strictly speaking, the former owner has no right to redeem his land from sale for tax delinquency and forfeiture for nonentry. As to forfeiture see point 19, syllabus, in the case of *State* v. *King, supra,* wherein it is stated: "The privilege given by statute to redeem forfeited lands is a mere grace of the State, not its duty, and does not constitute a vested property right in the former owner." See *Lawson* v. *Coal Land Co.*, 73 W. Va. 296, 299, 81 S. E. 583. There is a difference between delinquency and forfeiture. *Waggoner* v. *Wolf*, 28 W. Va. 820, 828. Nevertheless, the former owner is divested of his title where land has been sold for nonpayment of taxes and has become irredeemable. The privilege of redemption as to lands sold for delinquent taxes is the same as the privilege relating to forfeited lands and is one of grace only.

We are mindful of the holdings of this Court in *Shipley* v. *Browning*, 114 W. Va. 409, 172 S. E. 149, to the effect that a judgment against a former owner of a tract of land, duly recorded after sale of said tract of land for taxes but before the institution of a suit to sell the same for the benefit of the school fund, attaches as a lien on the privilege or equity of redemption, under Chapter 105, Section 17, Code, 1923. A similar holding, relating to land forfeited to the State will be found in the case of *Early* v. *Berry*, 115 W. Va. 105, 175 S. E. 331. But we do not think that the decisions of this Court in the *Shipley* and *Early* cases militate against the former holdings of this Court with reference to the privilege accorded the former owners of forfeited and delinquent lands to redeem the same. The accurate rule with reference to the privilege of redemp-

tion is stated in *Neal* v. *Wilson, supra*: "Such right of re-
demption is a substantial equity, a property right, and
exists as long as the legal title remains in the State. The
right is no less important to the claimant because it is a
gift from the State, it is his to the exclusion of others
notwithstanding."

The right accorded to a former owner under Section 5,
Article XIII, of the Constitution of this State, is distinct
from the privilege of redemption accorded such owner by
statute. The constitutional right to the excess of the pro-
ceeds of a sale is personal property. *Wiant* v. *Hays, Com'r.,*
38 W. Va. 681, 18 S. E. 807.

It would unduly prolong this opinion to discuss and
resolve all of defendant's contentions with reference to
questions Nos. 3, 4 and 5. It suffices to say that our con-
clusions on those questions are supported by reason and
authority, and, accordingly, we hold that process issued
and served by means of an order of publication, as pro-
vided by Section 12, constitutes due process of law, as re-
quired by the Fourteenth Amendment to the Federal Con-
stitution, and Section 10 of Article III of the Constitution
of this State. Lienholders of record, persons in possession,
and persons claiming an interest in lands proceeded
against, if they desire to do so, may intervene in this suit
"if so minded". The State is not called upon to have a
search of the public records made, and thus ascertain if
there are liens or claims against the land to which she is
entitled. As hereinbefore indicated, the trial court is
vested with sufficient authority and discretion to require
proof establishing the State's title to the lands to be sold,
or that the State has no title to such lands.

The order of publication, in accordance with the statute,
may be issued without affidavit being made and filed. We
can see no objection to that procedure in this and other
suits brought under the statute. Nor is it a violation of
due process to award the order of publication authorized
by the statute against resident defendants. *Longyear* v.
*Toolan, supra.*

368

Defendants take the position that twenty of the lots or tracts proceeded against in this suit have not become irredeemable, as required by Section 4, Article XIII of the Constitution of this State. They urge that said twenty tracts cannot be proceeded against for the reason that by Section 39 all taxes levied and assessed prior to the year 1936 are released and declared paid. Section 39 reads in part as follows: "Wherefore, it is the purpose and intent of the Legislature to release all taxes, interest and charges that may be due on any real estate in this State for the assessment year one thousand nine hundred thirty-five and for all years prior thereto, and all such taxes, interest and charges are hereby declared to be fully paid. If all taxes due on any land for the assessment year one thousand nine hundred thirty-six and for all years subsequent thereto have been paid, all title to any such land theretofore acquired by the state shall be and is hereby released."

It will be noted that the quoted portion of the statute performs two functions: (1) Releases all taxes assessed prior to the year 1936 and interest and charges thereon; and (2) conditionally releases the title to any land theretofore acquired by the State. The condition of the last-mentioned release is that all taxes upon said land assessed for the year 1936 and subsequent thereto have been paid.

It is alleged in the bill that taxes have not been extended or paid on the twenty tracts since the year 1935, and that all of the tracts mentioned have become irredeemable. On demurrer we treat such allegations as true.

It may be that the twenty tracts of land were theretofore certified by the auditor under the provisions of former statutes, and that said lands so certified under the terms of the statute became irredeemable on the 1st day of July, 1947, in accordance with the last paragraph of Section 9. Of course, if the twenty tracts of land had been formerly certified by the auditor under the provisions of former statutes, that fact should have been alleged in the bill of complaint. But the general allegations as to the irredeemability of the lands is admitted on demurrer. It is to be noted that the bill of complaint is incorrect in

alleging that no taxes have been levied and assessed on two of the tracts, which are shown by the certificate to have been sold for taxes levied in the years 1937 and 1940.

The bill of complaint is challenged on the ground that Section 27 prohibits the former owner, his heirs, assigns or agents from purchasing at a public sale, and therefore violates the privileges, immunities and equal protection guaranteed by the Fourteenth Amendment to the Constitution of the United States and by Sections 1 and 10, Article III of the Constitution of West Virginia. Section 1, Article III, of the Constitution of this State, is not applicable.

As to the constitutional right of transfer, as distinguished from the right to purchase at a sale decreed by a circuit court, this Court has held that an assign of a former owner of delinquent and forfeited land may have the benefit of a transfer by virtue of Section 3, Article XIII of the Constitution of this State. *State* v. *Board,* 111 W. Va. 562, 163 S. E. 67; *Mahaffey* v. *Batson,* 128 W. Va. 55, 36 S. E. 2d 497.

Section 27 reads as follows:

> "It shall be illegal for a former owner, in whose name any real estate was forfeited or was sold to the state, his heirs or assigns, or his or their agent, to purchase such real estate at the sale. No deputy commissioner, sheriff, clerk of the county or circuit court, assessor, nor deputy of either shall directly or indirectly become the purchaser, or be interested in the purchase of any real estate at the sale. Any such person or officer so purchasing shall for each offense forfeit one hundred dollars, to be collected as other forfeitures are collected. *The sale of any real estate to one of the persons or officers named in this section shall be voidable at the instance of any person having the right to redeem until such real estate reaches the hands of a bona fide purchaser.*" (Italics ours).

This section bars the owner for whose default the land was sold or forfeited, and those in privity with his title, from purchasing the lands. Of what constitutional privi-

lege or immunity, is the former owner and his successors in title denied? Wherein is he or those in privity with him denied any property? It is entirely within the competency of the Legislature to deny a former owner the right to purchase land on which he should have paid the taxes, but did not, and which he could have redeemed, but did not. No privilege or immunity is denied such former owner, or those claiming under him or acting for him. The former owner is not deprived of any property in the land since his title thereto has been extinguished and absolute title is owned by the State. We perceive no violation of the Fourteenth Amendment to the Federal Constitution and Sections 1 and 10 of Article III of the Constitution of this State involved in the provisions of Section 27.

The decision of the eighth question depends upon whether a conflict exists between the right conferred by the last sentence of Section 27, above quoted in italics, and the right of transfer under Section 3, Article XIII of the Constitution of this State.

"Under the Constitution of West Virginia, Article 13, Section 3, a tax deed, though void, may serve as color of title for the occupant of land claiming the forfeited title." *Smith* v. *Casto,* 107 W. Va. 1, 148 S. E. 566. To the same effect, see *Jarrett, et als.* v. *Osborn, et als.,* 84 W. Va. 559, 101 S. E. 162; *State* v. *Sommers,* 77 W. Va. 675, 89 S. E. 1; *State* v. *Harman,* 57 W. Va. 447, 50 S. E. 828.

In event of sale to a person prohibited from purchasing under Section 27, that person would receive a deed which would be good as color of title. If such purchaser, other than the person for whose default the land may have been forfeited or returned delinquent, his heirs or devisees, comes within one of the three classes mentioned in Section 3, Article XIII, and otherwise complies with the provisions of that section, then by operation thereof the title would be transferred to him. The latter part of Section 27 confers a right to avoid a deed made contrary to the provisions of that section. Nevertheless, the deed so avoided would serve as color of title. But Section 27 confers no right on a person having the right to redeem as against

a transferror under the provisions of Section 3, Article XIII of the Constitution and may not be used as a basis to deprive persons acquiring the land by transfer thereunder. But if such part of Section 27 is invoked against a person who does not hold title by a constitutional transfer or who is not a bona fide purchaser, a deed may be avoided on proper pleading and proof. Accordingly, we hold that the last sentence of Section 27, as construed herein, is a valid and constitutional exercise of legislative power.

In deciding questions 9, 10 and 11, we are concerned with the constitutional right of redemption accorded infants, insane persons and married women. As hereinbefore stated, lands must become irredeeemable before they may be sold for the benefit of the school fund. Section 6, Article XIII of the Constitution, among other things provided for therein, gives to owners of lands forfeited for nonentry, where the forfeiture takes place while such owner is under a disability of infancy, coverture or insanity, three years from the removal of such disability in which to redeem lands so forfeited, provided that the right to so redeem shall not extend beyond twenty years. Any lands so owned and forfeited for nonentry are not irredeemable within the meaning of Section 4, Article XIII of the Constitution. The State does not have absolute title, and, of course, under the provisions of Article XIII, Section 4, such lands cannot be sold. We see no conflict between the provisions of Section 4 and Section 6 of Article XIII of the Constitution. Lands which have been forfeited for nonentry and owned by infants, insane persons and married women are always redeemable within the time limits provided by Section 6, Article XIII of the Constitution.

The tenth question relates to Section 34, which reads as follows:

"In addition to and notwithstanding any other provisions of this article, any infant or insane person, the former owner of any forfeited or delinquent land which during such disability was

> sold as provided in this article, may redeem such
> land from the purchaser, his heirs or assigns, at
> any time before the expiration of one year after
> removal of the disability but in no event more
> than twenty years after the sale was confirmed,
> by paying such an amount as is required for re-
> demption under the provisions of section thirty-
> five, article three of this chapter."

This section gives to infants and insane persons the right of redemption to be exercised at any time within one year after the removal of the disability, and in no event more than twenty years after the sale has been confirmed. The right of infants and insane persons to redeem lands sold as delinquent does not exist under the Constitution, but it will be noted that forfeited lands owned by infants and insane persons are dealt with in Section 34. The constitutional period of three years is reduced to one year, within which such forfeited lands may be redeemed. We are mindful that the last paragraph of Section 34 provides for an alternative right of redemption under the Constitution, but that provision does not, in our opinion, save the statutory provision which is violative of Section 6 of Article XIII of the Constitution. Furthermore, no right of redemption is accorded by Section 34 to married women, as is required by Section 6, Article XIII of the Constitution.

It is urged by the defendant that the right of transfer is paramount to the right of redemption. We think that argument is valid as to the right of redemption conferred by statute, but the right of redemption conferred on infants, insane persons and married women by Section 6 of Article XIII of the Constitution is not subject to change by legislative enactment. The right of redemption conferred by Section 6, Article XIII of the Constitution does not conflict with the right of transfer under Section 3 of Article XIII of the Constitution, for the reason that land is not transferrable until it becomes irredeemable. As hereinbefore stated, lands which are forfeited for nonentry and owned by infants, insane persons, and married women do not become irredeemable until after the expi-

ration of three years from the time the disability is removed, or, at most, twenty years from the time of forfeiture. Lands forfeited to the State for nonentry belonging to infants, insane persons and married women can neither be sold in a suit of this kind nor transferred by operation of Section 3, Article XIII at any time before they become irredeemable.

Defendants assert that Section 2 violates Section 6 of Article XIII of the Constitution in that it permits a sale of lands forfeited to the State for nonentry belonging to infants, insane persons, and married women. An answer to that contention will be found in Section 2, a portion of which reads as follows: "Land which for any five successive years shall not have been so entered and charged shall by operation of law, without any proceedings therefor, be forfeited to the state *as provided in section six, article thirteen of the constitution, and shall thereafter be subject to transfer or sale under the provisions of sections three and four of such article.*" (Italics ours). As we have said, the lands of infants, insane persons and married women forfeited under Section 6, Article XIII of the Constitution are not subject to sale under the provisions of Section 4, until the right of redemption has been extinguished by lapse of time. We therefore hold that lands forfeited for nonentry and belonging to infants, insane persons and married women cannot be sold until the owner has been deprived of the right of redemption accorded by Section 6, Article XIII of the Constitution of this State; that Section 34 violates Section 6, Article XIII of the Constitution and is unconstitutional; and that Section 2 does not authorize the sale of lands which have not become irredeemable.

Complaint is made by defendants that under the provisions of Section 20 on application by a person substantially interested in the land, the costs in connection with such application and in connection with the reference to a commissioner in chancery shall be taxed to the applicant. Under common law costs were unknown, the allowance thereof being the creature of, and regulated by, statute.

*Burdette* v. *Campbell,* 126 W. Va. 591, 597, 30 S. E. 2d 713. In equity suits the allowance of costs generally rests in the sound discretion of the trial chancellor. Code, 59-2-11. In law actions, costs are awarded to the party for whom final judgment is given. Code, 59-2-8. But in the case of *State* v. *Sanders,* 128 W. Va. 321, 330, 36 S. E. 2d 397, it was held that: "It is a general rule that a sovereign is not liable for costs in actions or suits to which it is a party, unless there is express statutory authority creating such liability." There is no statute creating liability on the State in suits of this character. On the contrary, the statute expressly provides that an interested party shall pay the costs on an application to dismiss made by such party. We can see no inequity in such statutory provision, nor can we see any ground to deny the State the right to collect the costs under the provisions of the statute here considered.

Accordingly, we affirm the rulings of the Circuit Court of McDowell County in all respects, except as to its ruling on the constitutionality of Section 34, as to which the ruling of said circuit court is reversed.

*Affirmed in part;*
*reversed in part.*